COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LAZY R RANCH, L.P.; HELEN A. MCDANIEL, Individually, and as Trustee of the HELEN WILLIAMS INTER VIVOS TRUST, and as General Partner of LAZY R RANCH, L.P; and JOSEPH WILLIAMS, Individually, and as Trustee of the HELEN WILLIAMS INTER VIVOS TRUST, | § § § § § | No. 08-13-00281-CV |
| | | Appeal from the |
| | § | 109th Judicial District Court |
| Appellants, | § | of Winkler County, Texas |
| v. | § | (TC# 15,727) |
| EXXONMOBIL CORPORATION, | § | |
| Appellee. | § | |
| | § | |

# O P I N I O N

In this groundwater pollution case, Appellant land owners seek reversal of a take-nothing summary judgment granted in favor of ExxonMobil Corporation ("ExxonMobil") on claims for injunctive relief against purportedly imminent and irreparable hydrocarbon contamination of subsurface land, groundwater, and a nearby aquifer. We reverse and remand.

## BACKGROUND

### *Factual History*

Appellants own 20,000 acres of land spread across Ector, Crane, Ward, and Winkler counties known as the Lazy R Ranch. Relevant to this appeal are five areas of concern

("AOCs") within ranch boundaries: the ExxonMobil Pipeline Company Tank Farm ("AOC No. 1"); ExxonMobil/Aghorn YA Tank Battery No. 7 ("AOC No. 2"); the ExxonMobil Abandoned Tank Battery Northeast ("AOC No. 3"); the ExxonMobil Abandoned Tank Battery Northwest ("AOC No. 4"); and ExxonMobil/Aghorn Tank Battery No. 19 ("AOC No. 5"). ExxonMobil Corporation owned, operated, and maintained exclusive control over AOC Nos. 2 through 5 until June 1, 2008, when Aghorn Energy bought out ExxonMobil's lease.[1] Prior to the lease transfer, ExxonMobil Corporation had abandoned AOC Nos. 3 and 4.

Appellants maintain that on or about March 31, 2009, they first discovered that benzene and other hydrocarbons had leached into subsurface soil and groundwater located at the five AOC sites, including the four under ExxonMobil's exclusive control. ExxonMobil disputes that Appellants actually discovered contamination on this date. In deposition, Appellant Helen A. McDaniel testified that she had seen numerous, "obvious" surface spills throughout the years on the ranch and that the land looked like an oilfield. However, she also maintained in an affidavit that ExxonMobil representatives told her they would clean up any spills and would inform her of any major spills.

Appellants retained environmental expert Jerry D. Nickell, Sr., to assess the source and extent of contamination. Nickell's report indicates that he found hydrocarbon contamination in the soil at all four AOC sites controlled by ExxonMobil in amounts that exceed both Tier 1 Protective Concentration Levels administratively set pursuant to the Texas Commission on Environmental Quality's ("TCEQ") Texas Risk Reduction Program, as well as levels set by the Railroad Commission of Texas ("the Railroad Commission"). Nickell also found hydrocarbon groundwater contamination and a plume of free-phase crude oil on the groundwater table at AOC

_____

[1] ExxonMobil Pipeline Company, an entity separate from ExxonMobil Corporation, owned and operated AOC No. 1. The pipeline company appeared as a defendant in the trial court but is no longer a party to this appeal.

No. 4.

Nickell predicted that if the land is left in its current state, hydrocarbon pollution will continue to migrate through currently uncontaminated soil and groundwater and could potentially pollute an aquifer located underneath the ranch. Nickell characterized the harm from this contamination as being irreparable because contaminated groundwater and aquifers cannot be reasonably restored to their natural state following contamination. He also stated that immediate action was needed to remove the source of the contamination in order to preserve the integrity of uncontaminated soil, groundwater, and the aquifer.

### *Procedural History*

Appellants filed suit in October 2009, and amended their petition on February 8, 2013. In their live pleadings, Appellants brought claims for injunctive relief;[2] negligence and negligence per se; trespass; nuisance and nuisance per se; breach of contract and implied covenants; and attorney's fees and court costs.

ExxonMobil twice moved for hybrid summary judgment. The trial court denied ExxonMobil's initial hybrid motion for summary judgment. ExxonMobil then filed a second hybrid motion for summary judgment, arguing (1) that Appellants' claims were time-barred by the statute of limitations, (2) Appellants were not entitled to the $6,305,370.00 in remediation damages they requested because the most they could claim was diminution value of the land, and (3) Appellants failed to provide evidence of property value diminution. Appellants countered that the statute of limitations did not apply because they sought to enjoin a continuing nuisance, ExxonMobil failed to establish a date of claim accrual; and, alternatively, limitations had been

---

[2] Although Appellants framed their request for injunctive relief as a "claim" and both parties treat it as a distinct cause of action, we note that a mandatory injunction is not an independent cause of action, but a remedy. *See Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 276 (Tex.App.--El Paso 2001, pet. denied), *abrogated on other grounds by In re Estate of Swanson*, 130 S.W.3d 144 (Tex.App.--El Paso 2003, no pet.)

3

tolled by the discovery rule or the fraudulent concealment doctrine. Appellants also noted the damages request that ExxonMobil complained of no longer appeared in the amended pleadings at the time ExxonMobil filed its second motion for summary judgment.

Following a hearing, the trial court issued a general order granting ExxonMobil's second hybrid motion for summary judgment without specifying upon which grounds its judgment rested. It is this order that Appellants seek to reverse.

## DISCUSSION

Appellants challenge the trial court's grant of summary judgment on two grounds. In Issue One, they contend that their claims for equitable relief were not time-barred by the statute of limitations, since either the contamination was a continuing nuisance not subject to limitations or, alternatively, ExxonMobil failed to establish dates of accrual for all claims as a matter of law. Appellants also argue that any limitations were tolled under the discovery rule or the fraudulent concealment doctrine. In Issue Two, Appellants assert that they are specifically entitled by statute to seek injunctive relief against ExxonMobil, contrary to ExxonMobil's assertion before this Court that Appellants are only entitled to seek diminution damages for contamination that has already occurred. We address these issues in reverse order, beginning with Issue Two before moving on to Issue One.

### *Standard of Review*

We review summary judgment grants *de novo*. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When a party moves for hybrid summary judgment, we generally address the no-evidence grounds first before turning, if necessary, to the traditional grounds. *Id*. However, in determining whether a movant has actually presented a hybrid motion for summary judgment, we look to motion's substance and not its title. *See id*. Since, as we explain below,

4

the only actual dispute in this case concerns an affirmative defense ExxonMobil raised on summary judgment, and since an affirmative defense may only be raised in a traditional motion for summary judgment and not a no-evidence motion, *see Killam Ranch Props., Ltd. v. Webb County*, 376 S.W.3d 146, 157-58 (Tex.App.--San Antonio 2012, pet. denied), we set out and apply the traditional standard here.

A movant must show there is no genuine issue of material fact and it is entitled to judgment as a matter of law to receive summary judgment. TEX.R.CIV.P. 166a(c). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception as well." *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997). Where a nonmovant presents any evidence that would prevent the movant from conclusively establishing each element of its affirmative defense as a matter of law, summary judgment must be denied. *Molina v. Alvarado*, 441 S.W.3d 578, 581-82 (Tex.App.--El Paso 2014, pet. filed); *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 896 (Tex.App.--Austin 2001, no pet.)(genuine issue of material fact raised on any element of defense precludes summary judgment).

## I.

### PROPRIETY OF EQUITABLE RELIEF

In Issue Two, Appellants maintain the trial court erred in granting summary judgment because they were specifically entitled to seek a mandatory injunction by statute. In its reply brief before this Court, ExxonMobil contends that Appellants are not entitled to the injunction

because they have an adequate remedy at law—monetary damages for remediation of land that has already been contaminated. Further, without citing direct authority, ExxonMobil also argues that the trial court correctly granted summary judgment against the injunctive relief claim because the trial court cannot order ExxonMobil to comply with an injunction projected to cost more than remediation damages, which is the only proper measure of relief in this case.

We decline to reach the merits of these arguments because Appellee ExxonMobil never presented them—or any argument on the propriety of injunctive relief—to the trial court in writing as required by TEX.R.CIV.P. 166a(c). Instead, ExxonMobil moved for hybrid summary judgment on three grounds. Ground No. 1 pertained to the statute of limitations. Grounds No. 2 and 3 pertain to whether Appellants were entitled to *damages* and, if so, how much. Specifically, ExxonMobil set out the methods of calculating damages where injuries were permanent or temporary, noted that both methods ultimately hinged on the diminution value of Appellants' property, and then asserted it was entitled to summary judgment because Appellants provided no evidence on the issue of diminution value to sustain a damages award.

However, Appellants deleted their claim for damages from their pleadings before ExxonMobil moved for summary judgment. Appellants' live pleadings at the time of summary judgment requested only equitable relief. In essence, in Grounds No. 2 and 3, ExxonMobil moved for summary judgment on a moot point. Based on our review of the reporter's record, counsel acknowledged that Appellants pleaded out the damages request, and he appeared to raise the injunction propriety argument orally at the summary judgment hearing. This is not enough to allow the trial court to rule on this point or to allow us to consider it on appeal.

"Both parties to a summary judgment must present all arguments, *in writing*, to the trial court." *Johannes v. Ace Transp., Inc.*, 346 S.W.3d 640, 643 (Tex.App.--El Paso 2009, no

6

pet.)[Emphasis added]. Because Grounds No. 2 and 3 of ExxonMobil's written summary judgment motion dealt with a moot point on damages, and because ExxonMobil failed to present their argument against equitable relief in writing as required by the Rules of Civil Procedure, ExxonMobil's injunction complaints were never properly before the trial court, and as such the trial court's judgment could not have rested on any of those grounds.

Issue Two is sustained.

## II.

### STATUTE OF LIMITATIONS

We next turn to the remaining ground on which ExxonMobil moved for summary judgment: the affirmative defense of limitations. In Issue One, Appellants contend that the statute of limitations does not bar their claims for several reasons. First, with respect to the nuisance claims, the statute of limitations does not apply, since Appellants are seeking to abate a continuing nuisance, i.e., the spreading benzene and hydrocarbon contamination. Second, Appellants maintain their claim for breach of contract falls within the statute of limitations because ExxonMobil actually breached the contract within four years of this suit's inception. Third, with respect to all other remaining claims, and in the event the Court finds limitations are applicable to the nuisance claims, ExxonMobil as the proponent of the affirmative defense of limitations bore the burden of proving date of accrual for each claim as a matter of law, and it failed to meet that burden. Finally, even if ExxonMobil met its burden in establishing dates of accrual, it failed to conclusively negate the application of the discovery rule or the fraudulent concealment doctrine.

Although we are presented with some apparently novel legal questions, we need not decide them here. Numerous fact issues preclude summary judgment, regardless of which way

7

these legal questions are answered. Because Appellants' property-related claims all share a common statute of limitations date, and because we believe ExxonMobil failed to conclusively establish accrual dates or negate fraudulent concealment as to those claims, we address them together before turning to the breach of contract claim.

### *Affirmative Defenses on Summary Judgment—Limitations*

As the proponent of an affirmative defense, ExxonMobil bears the initial burden of proving its defense within the traditional summary judgment framework. *Killam Ranch Props., Ltd.*, 376 S.W.3d at 157-58. While Appellants are required to refute an affirmative defense once ExxonMobil presents *prima facie* evidence of that defense, the onus of proving when Appellants' causes of action accrued for summary judgment purposes lies squarely and at all times with ExxonMobil, the movant. ExxonMobil must conclusively prove the date of each claims' accrual and conclusively negate Appellants' pleaded discovery rule and fraudulent inducement issues. *Sullivan v. Brokers Logistics, Ltd.*, 357 S.W.3d 833, 837 (Tex.App.--El Paso 2012, pet. denied). "An issue is conclusively proven if reasonable minds would necessarily agree regarding the conclusion to be reached from the evidence." *Id*.

Accrual is a question of law. *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 271 (Tex.App.--El Paso 2001, pet. denied), *abrogated on other grounds by In re Estate of Swanson*, 130 S.W.3d 144 (Tex.App.--El Paso 2003, no pet.). A genuine issue of material fact as to the date a claim accrues for limitations purposes will preclude summary judgment. *See Eslon Thermoplastics*, 49 S.W.3d at 896.

"Generally, a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004). However, there are two instances in which the statute may be reset or in

8

which a party may be precluded from asserting limitations as an affirmative defense. "In rare cases where the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable, courts have recognized the discovery rule as an exception to the general accrual rule." *DBMS Invs., L.P. v. ExxonMobil Corp.*, No. 13-08-00449-CV, 2009 WL 1974646, at \*6 (Tex.App.--Corpus Christi June 11, 2009, pet. denied)(mem. op.). The discovery rule sets the accrual date as the date an inherently undiscoverable injury is discovered. *Id*. "An injury is inherently undiscoverable if, by its very nature, it is unlikely to be discovered within the prescribed limitations period despite the exercise of due diligence." *Id*. In conducting our analysis, we take a categorical approach, focusing "on whether a *type* of injury, rather than a *particular* injury, was discoverable." [Emphasis added]. *Id*.

Fraudulent concealment operates as the second exception to the statute of limitations. The fraudulent concealment doctrine is a form of equitable estoppel that, if proven, prevents a defendant "from relying on the statute of limitations as an affirmative defense[.]" *Walton*, 65 S.W.3d at 275. The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Id*. "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). Unlike the categorical discovery rule approach, the fraudulent concealment inquiry is fact-intensive, equity-driven, and may vary on a case-by-case basis. *Id*.

## A.

### *Property-Related Claims*

Appellants' claims for nuisance, nuisance per se, negligence, negligence per se, and

trespass are all injury-to-property claims subject to a two-year statute of limitations. TEX.CIV.PRAC.&REM.CODE ANN. § 16.003 (West Supp. 2014); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 435 (Tex.App.--Fort Worth 1997, pet. denied). "[W]here injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to effect the land." *DBMS Invs.*, 2009 WL 1974646, at *3 [Internal citation and Emphasis omitted].

Appellants contend that their nuisance and nuisance per se claims are not subject to the two-year statute of limitations at all because they are seeking to enjoin a continuing nuisance. *See Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 575 (Tex.App.--Texarkana 2000, pet. denied)("Limitations will not bar a suit to abate a continuing nuisance."). ExxonMobil disputes Appellants characterization of the contamination, arguing that it constitutes a permanent nuisance subject to limitations. *See Sullivan*, 357 S.W.3d at 834 n.1 (noting that permanent injuries are of a constant and continuous nature and presumed to continue indefinitely, whereas temporary injuries are generally "sporadic and contingent upon some irregular force").

We need not address the nature of the spreading contamination here. While offering some evidence that the hydrocarbon contamination *could have* occurred outside the limitations period as the result of previous spills, ExxonMobil failed to conclusively prove that the contamination on the Lazy R Ranch *did* occur outside the limitations period. Thus, even if Appellants presented a permanent nuisance claim subject to limitations along with the other property claims, ExxonMobil cannot conclusively establish when any of Appellants' property claims accrued, or that such claims were not fraudulently concealed.[3] As such, for the reasons set out below, summary judgment on these claims was improper.

---

[3] We do not reach the issue of whether the discovery rule was applicable to this case, as resolution of that question is unnecessary to the disposition of this appeal.

**1.**

**AOC No. 2:  Exxon/Aghorn YA Tank Battery No. 7**

We first address contamination claims related to AOC No. 2, a tank battery still in operation at the time ExxonMobil conveyed its lease to Aghorn.  As a threshold matter applicable to all AOCs, we note that ExxonMobil does not dispute that contamination exists at the four AOCs, nor does it dispute Appellants' contention that ExxonMobil exercised sole control over those areas prior to the sale of its lease to Aghorn.

ExxonMobil asserts that the accrual date for claims relating to AOC No. 2 was on March 3, 2002, when ExxonMobil spilled 17.3 barrels of oil, as evidenced by a letter and remediation report it submitted to the Railroad Commission.  According to those documents, ExxonMobil fully remediated the site by mixing contaminated soil with non-contaminated soil to reduce the overall hydrocarbon levels at the site.  However, Nickell's report details site contamination in excess of Railroad Commission regulatory standards years after ExxonMobil purportedly remediated the site.  The presence of contamination at levels in excess of regulatory standards in spite of ExxonMobil's purported clean-up efforts suggests one of two alternate scenarios.  Apart from the fact issue created by having alternative explanatory scenarios created by the evidence, which would preclude summary judgment *ab initio*, either scenario standing alone contains internal fact issues that would preclude summary judgment if presented individually.

In the first scenario, ExxonMobil fully remediated the reported spill in 2002, but a subsequent unreported spill or spills on land it exclusively controlled until the Aghorn sale caused the contamination that Nickell discovered.  This creates a fact question precluding summary judgment on ExxonMobil's affirmative defense at the first step of the analysis, since it

11

is impossible for us to determine, even generally, whether a cause of action accrued within the limitations period.

In the second scenario, the spill reported to the Railroad Commission did, in fact, cause the contamination discovered by Nickell. That would mean that despite ExxonMobil's public representations to the Railroad Commission, the company actually failed to remediate on-site contamination. At this point, ExxonMobil could arguably establish a definite date of accrual, and we would turn to the second step of the analysis and Appellants' claim of fraudulent concealment to determine statute tolling. Since ExxonMobil failed to conclusively prove Appellants knew about post-remediation subsurface contamination at the site, *see Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 203 (Tex. 2011)(actual knowledge of the specific injury precludes reliance on fraudulent concealment doctrine), the operative question here is whether ExxonMobil could nevertheless conclusively establish that Appellants should have known about the subsurface contamination in the exercise of reasonable diligence. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011).

As the Texas Supreme Court explained in *Ross*, reasonable diligence for purposes of claiming fraudulent concealment "requires that owners of property interests make themselves aware of relevant information available in the public record." *Id*. at 928. Here, we do not have a situation in which a check of independent, publicly available records would have objectively exposed ExxonMobil's fraudulent representations and made Appellants' reliance on those representations unreasonable. Rather, in this scenario, ExxonMobil's publicly filed documents would only further conceal its failure to remediate. The existence of occluded subsurface and groundwater contamination only came to light once Appellants hired Nickell to perform laboratory testing. In short, ExxonMobil failed to conclusively establish that under this scenario,

12

any check of public records or other act of reasonable diligence would have revealed its failure to remediate subsurface or groundwater contamination that was not readily apparent.

Summary judgment as to the claims related to AOC No. 2 was improper.

**2.**

*Remaining AOCs*

Having dealt with the AOC for which ExxonMobil identified a specific spill date, we turn to the remaining contamination sites for which the specific accrual dates are unknown. We begin with the claims related to AOC Nos. 3 and 4, the two tank batteries ExxonMobil abandoned prior to the Aghorn sale. ExxonMobil argues that the accrual date for claims related to AOC Nos. 3 and 4 must be outside the statute of limitations because those sites were abandoned and ceased operations many years before 2005.

In a post-submission brief tendered after oral arguments, Appellants correctly note that they do not need to establish a precise date of accrual in order to establish that a claim is beyond the scope of limitations. *See Walton*, 65 S.W.3d at 267 (evidence showed contamination occurred at some point in the 1960s). Nevertheless, based on the record before us, we cannot agree that ExxonMobil definitely established that the contamination at AOC Nos. 2 and 3 happened prior to abandonment in 2005. Even if the tank batteries had been abandoned for years, Nickell's report creates a material fact dispute on the date of accrual for claims related to these sites. Because there is no record evidence establishing when the leaks began or when Appellants' claims otherwise accrued for these sites, ExxonMobil failed to meet its burden here as well and summary judgment should have been denied as to these claims.

With respect to AOC No. 5, a tank battery still in operation at the time of the Aghorn sale, ExxonMobil claims the spill must have occurred outside the limitations period because the

13

only record evidence of any spills comes from McDaniel's deposition testimony, in which she testified there have been various surface spills on the ranch throughout the years, including spills about ten or fifteen years before suit. She also testified that she had no personal knowledge of any surface spills occurring at those sites within the limitations period.

Again, ExxonMobil was not required to provide specific dates of accrual, but it was required to conclusively establish Appellants' claims accrued outside the limitations period. We do not believe ExxonMobil can conclusively establish that no spill giving rise to the contamination at AOC No. 5 occurred within the limitations period merely based on the fact that McDaniel said she had no personal knowledge or memory of such a spill during deposition. The procedural posture of this case is pivotal here. ExxonMobil labors under a heavy burden, and McDaniel's deposition testimony creates only mere surmise or speculation that no spill occurred within the limitations period. This evidence constitutes no more than a scintilla and does not rise to the much higher threshold necessary to sustain its affirmative defense.

Summary judgment as to claims related to these sites was improper as well.

**B.**

***Breach of Contract and Implied Covenant Claims***

Finally, we address Appellants' breach of contract claims. The statute of limitations for breach of contract is four years. TEX.CIV.PRAC.&REM.CODE ANN. § 16.051 (West 2008). Appellants argue that ExxonMobil breached both an explicit term of the contract and implied covenants contained therein by repudiating the contract in an e-mail on July 28, 2009. ExxonMobil counters that the contract terminated by its own terms on April 1, 1996. Therefore, Appellants had four years from that date to file any contract claims before the statute of limitations expired.

14

A cause of action for breach of contract accrues at the time of breach. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). "A breach occurs when a party fails to perform a duty required by the contract." *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex.App.--Dallas 1992, writ denied). We need not decide when the breach occurred under the contract, since Appellants have asserted fraudulent concealment as to all claims. As with the property claims, there are genuine material fact disputes concerning whether ExxonMobil fraudulently concealed sub-surface contamination it had a duty to remediate under the contract. Thus, the statute was tolled to the date of contamination discovery, which is also in dispute.

Material fact issues exist on all claims and preclude ExxonMobil from establishing its affirmative defense as a matter of law. As such, summary judgment was improper.

Issue One is sustained.

## CONCLUSION

We reverse the trial court's judgment and remand this cause for further proceedings.


January 14, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Ferguson, Judge
Ferguson, Judge, Sitting by Assignment

15