**EXXONMOBIL CORPORATION,**
Petitioner,

v.

**LAZY R RANCH, LP; Helen A. McDaniel, Individually and as Trustee of the Helen Williams Inter Vivos Trust, and as General Partner of Lazy R Ranch, LP; and Joseph Williams, Individually and as Trustee of the Helen Williams Inter Vivos Trust, Respondents**

NO. 15–0270

Supreme Court of Texas.

Argued November 7, 2016

Opinion delivered: February 24, 2017

Arthur G. Uhl III, Robert Park, Uhl, Fitzsimons, Jewett & Burton, PLLC, San Antonio TX, John B. McFarland, Graves Dougherty Hearon& Moody, P.C., Austin TX, for Texas and Southwestern Cattle Raisers Association.

Courtney Smith, James D. Bradbury, James D. Bradbury, PLLC, Austin TX, for Texas Farm Bureau.

1. 456 S.W.3d 332 (Tex. App.–El Paso 2015).

Carlos R. Romo, Evan Andrew Young, Baker Botts LLP, Austin TX, for Texas Oil & Gas Assoication.

Michael Lynn Navarre, Beautty Bangle Strama PC, Shannon H. Ratliff, Ratliff Law Firm PLLC, Austin TX, for Petitioner.

Adam Quentin Voyles, Justin Ryan Goodman, Lubel Voyles LLP, Andrew Sher, The Sher Law Firm PLLC, Peter M. Kelly, Kelly Durham & Pittard, LLP, Houston TX, F. Leighton Durham III, Kelly Durham & Pittard, LLP, Dallas TX, for Respondent.

Chief Justice Hecht delivered the opinion of the Court.

This case involves claims of soil and groundwater contamination from oil drilling and production operations. We hold that some claims, but not all, are barred by limitations. We decline to consider the availability of injunctive relief to remedy such contamination because the issue was not properly raised in the trial court. We affirm in part and reverse in part the judgment of the court of appeals[1] and remand the case to the trial court for further proceedings.

## I

For nearly sixty years, petitioner ExxonMobil Corporation conducted oil and gas drilling and production operations on the Lazy R Ranch, which spans almost 20,000 acres near the West Texas town of Monahans. When ExxonMobil sold its operations in 2008, the Ranch retained a registered environmental manager, Jerry Nickell, to investigate whether the Ranch had been contaminated. Nickell's report, dated March 31, 2009, identified four areas previously under ExxonMobil's control, a

total of 1.2 acres, where hydrocarbon contamination exceeded levels set by state law.[2] The report warned that surface and subsurface contamination could threaten groundwater.

In October 2009, the Ranch sued Exxon-Mobil for damages for remediation that it estimated would cost $6.3 million.[3] But under Texas law, a recovery of damages for a permanent injury to real property is generally limited to the difference in value before and after the injury.[4] Even if the injury is temporary, the cost to repair the injury cannot be recovered when the cost exceeds the loss in the land's value due to the injury—what we have referred to as "the economic feasibility exception".[5]

**2.** A fifth area owned and operated by Exxon-Mobil Pipeline Co., an entity separate from ExxonMobil Corp., is not at issue in this appeal.

**3.** There are three plaintiffs: the Lazy R Ranch, LP; Helen A. McDaniel, individually, as trustee of the Helen Williams *Inter Vivos* trust, and as general partner of the Lazy R Ranch, LP; and Joseph Williams, individually and as trustee of the Helen Williams *Inter Vivos* Trust. The parties do not dispute that the plaintiffs own the claims asserted in this case. We refer to the plaintiffs collectively as "the Ranch". Defendant is ExxonMobil Corp., whom we refer to as "ExxonMobil".

**4.** *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 478–479, 483 (Tex. 2014) (citing *Fort Worth & D.C. Ry. Co. v. Hogsett*, 67 Tex. 685, 4 S.W. 365, 366 (Tex. 1887)).

**5.** *J & D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649, 656 n.27 (Tex. 2016) (noting that the *Gilbert Wheeler* decision recognized, for damages for temporary and permanent injuries to real property, the " 'economic feasibility exception,' which limits the owner to the lesser amount of damages when necessary to avoid overcompensation"); *Gilbert Wheeler, Inc.*, 449 S.W.3d at 481–482 (explaining that Texas intermediate courts, in temporary injury cases, had "recognized the so-called economic feasibility exception to the general rule that the cost to restore is the proper measure of damages"). The Court reconciled two earlier decisions, deeming them consistent despite their divergent holdings on the measure of damages, because both holdings were "necessary to ensure that the landowner was adequately, but not excessively, compensated." *Id.* at 481–482 (discussing *Pac. Express Co. v. Lasker Real–Estate Ass'n*, 81 Tex. 81, 16 S.W. 792, 793 (1891) (holding that if plaintiff owned both the damaged house and the land on which it stood, and if the property's value—due to age or new railroad lines—was only a fraction of the cost of repairing or rebuilding the house, the measure of damages should be "the difference between the value of the land immediately before and after a house on it is injured or destroyed, with interest"), and *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 235 (Tex. 2004) (though the landowner's facility had been completely destroyed, the landowner was entitled to recover only the amount of money necessary to rebuild the facility, plus compensation for loss of the facility's use, rather than the significantly greater amount found for the difference in the land's value before and after the injury)). Other Texas courts have also applied the economic feasibility exception or something like it. *See Mieth v. Ranchquest, Inc.*, 177 S.W.3d 296, 303–304 (Tex. App.–Houston [1st Dist.] 2005); *N. Ridge Corp. v. Walraven*, 957 S.W.2d 116, 119–120 (Tex. App.–Eastland 1997, pet. denied) (though injuries caused by unrelated spills were capable of being remediated, the cost was more than six times the value of the entire tract; on remand, "to properly determine if it was 'economically feasible' to 're-pair' the land, the jury should consider evidence of the difference in the value of the land before and after the injury"); *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 32 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) ("[When] damage to real property is involved, the correct measure of damages is a fact-specific inquiry. If repair is feasible and does not cause economic waste, then the plaintiff may recover the cost of repair; otherwise, the plaintiff is entitled to the decrease in market value caused by the injury."); *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W.2d 715, 717 (Tex. App.–San Antonio 1985, writ dism'd) ("In cases concerning defective construction issues, Texas courts generally allow damages based on cost of repairs if repairs are feasible and do not involve economic waste."); *Sadler*

There is some evidence that any loss in value to Ranch property due to the alleged contamination is minimal.[6] So the Ranch amended its pleadings to drop its claim for damages and seek only injunctive relief ordering ExxonMobil "to immediately abate or remediate the conditions causing the contamination to the surface, subsurface and groundwater on and under" the Ranch. "Such abatement or injunctive relief," the Ranch alleged, "would, among other things, necessarily require the Defendants to remove significant volumes of earthen contaminated materials from Plaintiffs' property, backfill with clean materials and delineate and remediate identified groundwater contamination." The Ranch's amended petition sought to compel ExxonMobil, not to pay $6.3 million for remediation costs, but to remediate at whatever cost.

ExxonMobil moved for summary judgment on three stated grounds: that "(1) the claims are barred by the statute of limitations; (2) Plaintiffs, as a matter of law, are not entitled to their requested relief; and (3) there is no evidence of diminution in the value of the property." ExxonMobil asserted that the limitations period is two years for the Ranch's property claims and other related claims,[7] or alternatively, four years for the other claims.[8] ExxonMobil argued that one of the Ranch's owners, Helen McDaniel, had given deposition testimony that she had lived on the Ranch from 1964 to 2009, knew of many oil spills around the Ranch and at several of the sites in question before 2005 (more than four years before the Ranch filed suit), and did not know of any spills at any of the four sites after 2005. With respect to ExxonMobil's assertion that the Ranch was not entitled to the relief it sought, the motion did not mention the Ranch's claim for injunctive relief.

In response, the Ranch asserted that the Nickell report established that the four areas in question were contaminated and that the contamination could only have come from ExxonMobil's operations. The Ranch contended that surface contamination was spreading into the subsurface and would eventually reach groundwater. This was a continuing nuisance, the Ranch argued, and its claim for a mandatory injunction ordering ExxonMobil to remediate or abate this continuing nuisance was therefore not subject to limitations.

*v. Duvall*, 815 S.W.2d 285, 292 (Tex. App.–Texarkana 1991, writ denied) (noting, in a suit by a co-tenant against other co-tenants for, *inter alia*, diminution of the property value due to timber cutting, that an injury may be deemed permanent, in absence of proof or a jury finding that repair is actually or economically feasible, and that the measure of damages would then be the decrease in the value of the land); *Atlas Chem. Indus., Inc. v. Anderson*, 514 S.W.2d 309, 319 (Tex. Civ. App.—Texarkana 1974) ("The correct measure of damages to the land in this case was the diminution in fair market value, because the cost of restoration [ ] was well in excess of the diminution in fair market value."), *aff'd*, 524 S.W.2d 681, 687 (Tex. 1975).

6. The value of the Ranch is not undisputed or conclusively established. Helen McDaniel testified in her deposition that she had received an oral offer of $11,000,000 for the ranch in 2008. ExxonMobil, however, cites testimony showing a 2006 transaction—described by McDaniel's brother Joseph Williams as "an inside family deal"—in which Helen McDaniel paid another brother and a sister $50 an acre for each of their undivided quarter interests in the ranch, a transaction that increased McDaniel's share in the ranch to an undivided three-quarters interest.

7. Tex. Civ. Prac. & Rem. Code § 16.003(a).

8. The Ranch also brought suit on claims for breach of contract and implied covenants and argued that their contract causes of action did not accrue until ExxonMobil repudiated its contractual obligation to clean up identified contamination. Tex. Civ. Prac. & Rem. Code § 16.051 (residual four-year limitations period).

At the hearing on the motion, ExxonMobil's counsel argued that the Ranch was no more entitled to an injunction mandating remediation than it was to recover remediation costs when those costs exceeded the loss in land value from the alleged contamination. The Ranch countered that it was entitled to an injunction ordering ExxonMobil to prevent the spread of existing soil contamination to the groundwater, even if that could be accomplished only by removing the existing contamination.

The trial court granted ExxonMobil's motion for summary judgment without specifying the grounds. The court of appeals reversed and remanded.[9] It concluded that fact issues subsisted regarding ExxonMobil's limitations defense. The court declined to consider whether the Ranch could obtain injunctive relief when it could not recover damages because that issue, while addressed at the hearing on the motion for summary judgment, was not raised in the motion itself.[10]

We granted ExxonMobil's petition for review.[11]

## II

■ To obtain summary judgment on limitations, ExxonMobil must establish that the Ranch's claims for contamination accrued outside the limitations period.[12] Generally, a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief.[13]

■ The Ranch argues that its claim is for injunctive relief to remedy a continuing nuisance that is not subject to limitations.[14] For reasons explained in Part III, we decline to address this argument. The Ranch also argues that regardless of when its claims for surface contamination accrued, its claims for groundwater contamination cannot be barred by limitations because it has not yet happened. But a claim accrues when injury occurs, not afterward when the full extent of the injury is

**9.** 456 S.W.3d 332 (Tex. App.–El Paso 2015).

**10.** *Id.* at 336–342.

**11.** 59 Tex. Sup. Ct. J. 1592 (Sept. 2, 2016).

**12.** *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748–749 (Tex. 1999) ("A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations .... [A] party asserting fraudulent concealment as an affirmative defense to the

statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. " (footnotes omitted)).

**13.** *See Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011).

**14.** Texas cases hold that limitations is not a defense to abate a continuing nuisance. *See, e.g., Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 575 (Tex. App.–Texarkana 2000, pet. denied); *Abbott v. City of Princeton*, 721 S.W.2d 872, 875 (Tex. App.–Dallas 1986, writ ref'd n.r.e.); *Stein v. Highland Park Indep. Sch. Dist.*, 540 S.W.2d 551, 554 (Tex. Civ. App.– Texarkana 1976, writ refused n.r.e.); *see also Simi Inv. Co., Inc. v. Harris Cty., Tex.*, 236 F.3d 240, 250 n.14 (5th Cir. 2000). The issue was not reached in *Schneider National Carriers, Inc. v. Bates*, 147 S.W.3d 264, 288–289 (Tex. 2004).

known.[15] The issue, then, is when the Ranch's claims for surface contamination accrued.

ExxonMobil does not argue that there is no evidence of contamination. For summary judgment purposes, at least, the Nickell report establishes that four Ranch sites were contaminated as of March 2009. Nor does ExxonMobil argue that someone else or something else was responsible for that contamination.[16] Rather, ExxonMobil argues that McDaniel's deposition testimony shows that any contamination occurred before 2005. McDaniel testified that she had noticed oil spills on the Ranch for years. "They're everywhere," she repeated. "[T]here's been spills all over there for years." She offered a few examples but little detail. One area, she said, was "very oil-field looking". At one point she was asked whether "anybody aside from Mr. Nickell [ ]ever told you that there was hydrocarbon contamination, not just the groundwater, but the surface", and she answered: "Anyone can see it. I mean, it's extremely obvious." But she also testified: "Well, I don't know contamination. I just know oil field is what I guess I would like for you to understand from me." On the whole, it is clear that what McDaniel knew about and what she thought was obvious were oil spills, not contamination. She testified that ExxonMobil had cleaned up

spills and was not aware of one ExxonMobil had not cleaned up. In her affidavit in response to the motion for summary judgment, she stated that before the Nickell report, she had "no knowledge of any contamination on the ranch, nor any reason to suspect any contamination even existed on the Lazy R Ranch."

This testimony is some evidence that contamination occurred before 2005, and that some was cleaned up. ExxonMobil and the Ranch stipulated in a 1986 agreement that although ExxonMobil was required to clean up oil leaks on the Ranch, "Exxon shall not be required to remove contaminated soil from the premises." This agreement comported with Railroad Commission Statewide Rule 91, which permits contaminated soil to remain onsite if it does not exceed a defined level of contamination.[17] Legally, and under the terms of its agreement with the Ranch, ExxonMobil's remediation efforts could have left behind soil that *looked* contaminated even if it was not. Evidence of leaks, or of what looked like a past leak, might not be evidence of contamination. But given Nickell's report, McDaniel's testimony is evidence of contamination occurring before 2005.

■ With respect to two of the four sites that had long been abandoned, Exx-

---

**15.** *Gonzales v. Sw. Olshan Found. Repair Co.,* 400 S.W.3d 52, 57–58 (Tex. 2013) (notice from an expert detailing the scope and source of the injury was irrelevant when the plaintiff "knew or should have known" of damage to her home more than two years before filing suit) (citing *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.,* 988 S.W.2d at 749–750).

**16.** ExxonMobil, for purposes of the motion for summary judgment at issue, apparently dropped earlier assertions that its remediated spills could not have caused the alleged contamination and that the Texas Railroad Commission had found no contamination and deemed the most likely explanation for the

Ranch's complaints to be that an extended drought had lowered the water levels in many West Texas wells.

**17.** Excavation for disposal or remediation is not required for contaminated soils containing no more than 1.0% by weight total petroleum hydrocarbons; on-site bioremediation of contaminated soil is permitted to result in a mixture of soils no more than 18 inches in depth that contains no more than 5.0% by weight total petroleum hydrocarbons. 16 TEX. ADMIN. CODE § 3.91(c)(3), (d)(1) (Tex. R.R. Comm'n, Cleanup of Soil Contaminated by a Crude Oil Spill).

onMobil has presented evidence that neither was contaminated after 2005. McDaniel testified that one site, which the parties have referred to as the northwest abandoned battery, had been abandoned 10 to 20 years earlier, had not been used since, and had remained unchanged. McDaniel also testified that she was unaware of any spills at a second site the parties call the northeast abandoned battery. This evidence conclusively establishes that the contamination occurred at these sites more than two or four years prior to October 2009, when the Ranch filed suit. With respect to the other two sites, tank battery No. 7 and sub battery No. 19, McDaniel's testimony indicates that contamination may have occurred before 2005 but gives no indication that contamination did or did not occur since then.

■ The Ranch contends that the discovery rule should apply to defer accrual of its claims and delay commencement of the limitations period. The discovery rule applies when a type of injury is objectively verifiable and inherently undiscoverable within the limitations period.[18] Soil contamination from oil spills is unquestionably objectively verifiable, but it is not inherently undiscoverable within the

limitations period.[19] On the contrary, we have previously stated that application of the discovery rule in nuisance cases is rare, as plaintiffs typically learn of unreasonable discomfort or annoyance promptly.[20] Nuisances caused by oil and gas operations prove no different. McDaniel testified that she often drove across the ranch, observing ExxonMobil's operations, and seeing and being told of oil spills and cleanup operations. There was nothing inherent in the possibility of contamination that kept the Ranch from hiring Nickell sooner than it did.

■ The Ranch also contends that limitations should be tolled by ExxonMobil's fraudulent concealment of the contamination.[21] A party raising fraudulent concealment has the burden to raise a fact question for each element of fraudulent concealment.[22] Fraudulent concealment requires showing that the "defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff."[23] But there is no evidence of such misconduct on ExxonMobil's part with respect to any of the spills on the Ranch, much less at the two long-abandoned batteries. There is no evidence that

---

**18.** *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

**19.** *See, e.g., Ranchero Esperanza, Ltd. v. Marathon Oil Co.*, 488 S.W.3d 354, 365 (Tex. App.–El Paso 2015, no pet.) ("[S]urface damages arising from salt water emerging from a well are not inherently undiscoverable, because they are the type of injuries that could be discovered through due diligence within a two-year limitations period."); *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 619–620 (Tex. App.–Texarkana 2002, pet. denied) (holding that an injury undiscoverable by mere observation was not "inherently undiscoverable" because "the owner's obligation of due diligence went beyond mere passive visual observation" and "extended to inquiries of the lessees as to their activities.").

**20.** *Schneider*, 147 S.W.3d at 279.

**21.** The doctrine of fraudulent concealment tolls the statute of limitations until the fraud is discovered or could have been discovered with due diligence. *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011); *see also KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) ("Second, when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury.").

**22.** *KPMG*, 988 S.W.2d at 748.

**23.** *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d at 67.

ExxonMobil was incorrect or deceptive in its reports regarding remediation for the abandoned sites, nor is there evidence that the Ranch owners relied on those reports.

For these reasons, we conclude that ExxonMobil was entitled to summary judgment on the Ranch's claims relating to the two abandoned sites but not to the other two still in use.

## III

The Ranch's exact claims for relief have evolved with the litigation. Shortly before ExxonMobil moved for summary judgment, the Ranch dropped its claim for remediation costs as money damages. It sought only a mandatory injunction ordering ExxonMobil to remediate the contamination, requiring essentially the same operations for which it sought costs as damages. But the Ranch also requested an injunction mandating abatement of the contamination, by which it seems to have meant preventing it from spreading to groundwater. It persisted in characterizing its claims thusly until after oral argument in the court of appeals, at which point it told that court it was requesting ExxonMobil to "institute stabilization measures to prevent its contamination from migrating to pollute as yet uncontaminated groundwater resources at [the four locations at issue] in the future."[24] In this Court, the Ranch seems to have further limited its claim, telling us that it seeks "injunctive relief requiring Exxon to institute stabilization measures to prevent Exxon's existing contamination from migrating into to as-yet uncontaminated groundwater resources."[25] The Ranch does not, it states, "seek a mandatory injunction to remediate or restore the Lazy R Ranch [or] monetary compensation for any past contamination or surface damages",[26] but then it adds, confusingly, "Exxon may be required to implement some remedial measures at the identified [sites] to reduce existing contamination to protective concentration levels in compliance with applicable Texas regulations."[27]

The Texas Oil & Gas Association argues in an amicus brief that a suit for injunctive relief should not be allowed to evade the value-loss limitation the law has long placed on recoveries for injury to property. To the contrary, the Texas and Southwestern Cattle Raisers Association and the Texas Land & Mineral Owners Association argue that contamination like that alleged by the Ranch may be a continuing nuisance remediable by injunctive relief without regard to limitations or the economic feasibility rule for damages. While amici have thoroughly examined these issues, the parties have not.

 Rule 166a(c) of the Texas Rules of Civil Procedure provides that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."[28] While ExxonMobil's motion for summary judgment did mention that the Ranch should not be entitled to its requested relief, the relief the Ranch was then requesting included injunctive relief. ExxonMobil's motion for summary judgment did not address the availability of injunctive relief. A motion for summary judgment must state the specific grounds entitling the movant to judgment, identifying or addressing the cause

24. Appellants' Response to Appellee's Post–Submission Brief at 2.

25. Respondents' Brief on the Merits at vii.

26. *Id.* at v.

27. *Id.* at 10.

28. Tex R. Civ. P. 166a(c).

of action or defense and its elements.[29] And while the availability of injunctive relief was discussed at the hearing on the motion, the motion itself did not "present[ ]" the issue, as the rule requires. The Ranch's apparent adjustments in its position on appeal muddle the issue further. As the Ranch points out, the record does not reflect exactly what it contemplates as "stabilization".

Because the issue of the Ranch's entitlement to any injunctive relief was not properly presented to the trial court, we, like the court of appeals, must decline to address it.

\* \* \* \* \*

Accordingly, the court of appeals' judgment is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings.

Justice Lehrmann did not participate in the decision.

---

**29.** *See McConnell v. Southside Indep. Sch.* *Dist.*, 858 S.W.2d 337, 341–342 (Tex. 1993).