**Affirmed and Majority and Dissenting Opinions filed April 12, 2022.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-20-00202-CV

_____

**ALI MUSTAFA AND ALI REZA LAHIJANI, Appellants**

**V.**

**AMERICO ENERGY RESOURCES, LLC, Appellee**

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2017-68458**

## M A J O R I T Y   O P I N I O N

Appellants Ali Mustafa and Ali Reza Lahijani appeal the trial court's granting of summary judgment in favor of appellee Americo Energy Resources, LLC ("Americo") based on statute of limitations. In two issues, which we construe as one, appellants argue that the trial court erred in granting Americo's amended motion for summary judgment as to appellants' negligence claim. We affirm.

# I.  BACKGROUND

The underlying facts are generally uncontested. In 1947, Union Producing Company became the lessee of an oil, gas and mineral lease (the "Bash Lease") on 225 acres of land. The Bash lease afforded the lessee the right to operate and drill the land for five years; the lessee could continue to operate on the land if the lessee continued to produce oil from the property.

In 2000 and 2004, appellants acquired the lessor's rights under the Bash lease by purchasing the ownership of several of the tracts of land covered by the lease. The combined land was over thirteen acres of undeveloped property and contained two oil wells: Bash A6 and Bash 1. When appellee purchased the Bash Lease in 2002, Bash A6 had ceased production in marketable quantities, but Bash 1 continued production until November 2008.

In March 2016, Lahijani inspected the property with Pedram Lelazari,[1] a potential business partner for developing the land. Lelazari noticed a "white area" around the saltwater tanks near Bash 1, which Lelazari believed was an indication that the tank was leaking. No contamination was ever noticed or alleged to have occurred near Bash A6. Lahijani contacted the Texas Railroad Commission ("TRC") and requested an investigation. The TRC ordered Americo to treat the soil and remove leftover debris. In its letter to Americo, TRC also stated, "[d]uring the inspection, Mr. Lahijani alleged that numerous spills have occurred in the past resulting in dead vegetation on the lease."

In June 2017, Americo was notified that appellants had again contacted the TRC and that a joint inspection revealed oil-stained soil and salt crystals. In

---

[1] We note that while both parties spell his name as "Lelazari," his name is sometimes spelled "Lalezari" in the summary judgment evidence. We will use the spelling employed by the parties in the appellate briefs.

response, Americo hired a company to perform a solution treatment to the affected area. Americo sent samples from the treated area to the TRC, which found that the samples were within the regulatory limits.

In response, appellants hired David Heslep to test the soil and groundwater on the property. In his affidavit, Heslep opined that "[a]ll evidence clearly indicates the property has contamination as a result of the oil and gas operations over time."

In October 2017, appellants filed suit against Americo for breach of contract, declaratory judgment, conversion, and negligence. The breach of contract, declaratory judgment, and conversion claims were based on Americo's alleged failure to pay royalties to appellants and Americo's potential drilling without consent on the property. The negligence cause of action was based on Americo's failure to take the "requisite steps to prevent leaks or pollution to the property once the wells became inactive."

Americo's original answer alleged that appellants' claims were barred by two-year and four-year statutes of limitations. Appellants filed an amended petition, pleading the discovery rule and asserting that the statute of limitations regarding negligence should be tolled because the allegedly negligent acts and omissions of Americo were not discovered until March 18, 2016.

In May 2019, Americo filed a motion for summary judgment, arguing that all of appellants' causes of actions were barred by two-year and four-year statute of limitations. As to appellants' breach of contract, conversion, and declaratory judgment claims that were predicated on Americo's failure to pay royalties up until 2008 when production ceased, Americo argued appellants' claims for royalties beginning in 2008 and earlier were barred by the four-year statute of limitations that govern contractual agreements. *See* Tex. Civ. Prac. & Rem. Code Ann.

3

§ 16.004; *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 214 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("The statute of limitations for the recovery of royalty payments is four years.").

Americo argued that appellants' negligence claim accrued when the Bash lease stopped producing in paying quantities. Americo further averred that appellant's pleadings failed to establish that the injury was inherently undiscoverable. In further support of its position, Americo asserted that due to the oil field equipment left on the ground and readily visible after oil production ceased in 2008, the type of injury complained of by appellants was inherently discoverable in nature. Thus, according to Americo, appellants' claims for negligence were barred by the two-year statute of limitations applicable to claims for injury to property because appellants failed to perform any due diligence to discover the injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

In support of their motion for summary judgment, Americo submitted the affidavit of Mehdi Sadeghi, one of Americo's petroleum engineers. According to Sadeghi, Americo acquired the Bash A6 and Bash 1 wells in 2002. Bash A6 ceased producing oil in 1998 before Americo even acquired it, and Bash 1 ceased production in 2008.

Appellants filed an opposition to Americo's motion for summary judgment. In their opposition, appellants admitted that prior to his visit in 2016, Lahijani had not visited the property since 2010. But appellants claimed that they did not discover or have a reason to discover any problems with the property until 2016, when Lelazari indicated that the white areas around the well should be investigated, which appellants claim was the first indication that soils and water should be tested. Appellants claimed that evidence of visible oil equipment above ground was not sufficient to make appellants aware of any possible contamination,

4

nor was the presence of equipment an indication that a landowner should perform due diligence to discover potential contamination.

In its amended motion for summary judgment, Americo again argued that appellants' alleged injury was not inherently undiscoverable. Americo averred that appellants should have discovered the nature of their injury by November 1, 2008, when all production stopped, or at the latest by February 2015, when the tanks were cleaned out and all oil products were removed. Americo attached the affidavit of Malek Hadipour, the lease operator, to support its claim. According to the affidavits of both Sadeghi and Hadipour, JEM Field services removed the contents of the steel production tanks on the Bash 1 site in February 2015, but left the tank bottoms on site after they finished the cleanout. According to Sadeghi, "[t]he tank bottoms consisted of sand, soil, oil and salt water residue from produced water, leaving a noticeable area of stained soil." The affidavit of Sadeghi further explains that Hadipour personally observed there were not leaks or spills during the removal process, but that staining from the tank bottoms remained after the February 2015 tank clean out. Hadipour concluded that "[n]o other activities or operations were conducted on the Property that could have caused any deposit of tank bottoms, oil stain or deposit of salt crystals after February 27, 2015." Because appellants did not file their lawsuit until October 2017, more than two years after February 27, 2015, Americo claimed that appellants' negligence claim was barred by the statute of limitations.

On December 30, 2019, the trial court granted Americo's motion for summary judgment and dismissed appellants' claims with prejudice. Appellants timely filed their appeal.

## II.    DISCOVERY RULE

In their sole issue, appellants argue that the trial court erred in granting

5

Americo's motion for summary judgment as to their negligence claim for soil and groundwater contamination based on statute of limitations.[2] Appellants argue that the trial court erred in finding that: (1) the presence of equipment, debris, and soil discoloration do not prohibit the application of the discovery rule; and (2) Americo met its burden of negating the existence of any factual dispute regarding its statute of limitation defense.

## A.   STANDARD OF REVIEW

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003); *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 881 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A defendant moving for summary judgment must conclusively negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes its right to summary judgment, then the burden shifts to the plaintiff to raise a genuine issue of material fact. *Id.* We review the granting of summary judgment de novo. *Knott,* 128 S.W.3d at 215. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *See Markwardt*, 325 S.W.3d at 881.

---

[2] Appellants do not challenge the trial court's summary judgment as to their claims for breach of contract, declaratory judgment, and conversion. In their appellate brief, appellants only discuss the discovery rule in regard to the two-year statute of limitations. The negligence claim is the only claim subject to a two-year statute of limitations; the other claims are all subject to a four-year statute of limitations.

**B. APPLICABLE LAW**

"As a general rule, 'a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" *Id.* (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The discovery rule, when applicable, defers accrual of a cause of action until the plaintiff knew—or, exercising reasonable diligence, should have known—of the facts giving rise to the cause of action. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998); *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 49 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Markwardt*, 325 S.W.3d at 881.

However, the discovery rule is limited to those rare "circumstances where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015); *see Via Net v. TIG Ins.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) ("While the Legislature's silence on accrual in most cases leaves that question to the courts, we have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes."); *LaTouche v. Perry Homes, LLC*, 606 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). An injury is not inherently undiscoverable when it could be discovered through the exercise of reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). "Whether an injury is inherently undiscoverable is a legal question that is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net*, 211 S.W.3d at 314 (emphasis in original).

When a plaintiff discovers or should have discovered the cause of his injury and whether a particular plaintiff exercised due diligence in so discovering are

7

generally questions of fact. *Pirtle v. Kahn*, 177 S.W.3d 567, 572 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). However, if reasonable minds could not differ about the conclusion to be drawn from the facts, the commencement of the limitations period may be determined as a matter of law. *Id.*

> A defendant seeking summary judgment based on limitations must (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving, as a matter of law, there is no genuine issue of fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of her injury.

*Markwardt*, 325 S.W.3d at 882.

## C.    APPLICATION

Appellants argue that Americo did not meet its summary judgment burden of establishing as a matter of law the date of appellants' injury and of negating as a matter of law the application of the discovery rule. Appellants argue that the presence of equipment, debris, and soil discoloration does not prove as a matter of law the date appellants should have been aware of their injury or the inapplicability of the discovery rule.

We first note that appellants do not challenge the application of a two-year statute of limitations to their negligence claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Second, we note that while appellant complains about the "finding[s]" of the trial court, the order granting Americo's motion for summary judgment contains no findings. The order simply grants the motion. Therefore, we review de novo whether Americo: (1) conclusively proved when the cause of action accrued, and (2) negated the discovery rule. *See id.*; Tex. R. Civ. P. 166a(c); *Markwardt*, 325 S.W.3d at 882.

The affidavits of Sadeghi and Hadipour established that Americo never operated the Bash A6 well, which ceased production in 1998. Additionally, the

8

affidavit of Hadipour established that Americo produced oil from the Bash 1 well from approximately 2002 and 2008 and then continued to store oil on the property until February 2015. Hadipour testified that no activity occurred on the property that could have caused the alleged violation after February 27, 2015. Appellants did not produce any evidence to dispute this evidence. The affidavits conclusively established that any activity performed by Americo could not have caused any deposit of tank bottoms, oil stains, or salt residue after February 2015. Furthermore, Hadipour's affidavit established that the contamination was discoverable on February 27, 2015, because of the discoloration present and visible on the ground at that time. This summary judgment evidence is undisputed, and thus, conclusively established that appellants' claim began to accrue, at the latest, in February 2015, and that consequently the alleged contamination occurred more than two years prior to when appellant filed suit on October 13, 2017. *See ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017). Appellants do not seem to challenge Americo's assertion that the latest date on which appellants' claim accrued was February 27, 2015. Instead, appellants focus their arguments on the application of the discovery rule.

First, we must determine if the discovery rule applies by keeping in mind that the discovery rule is only applicable in "exceptional cases." *Via Net*, 211 S.W.3d at 313. That is, the discovery rule is restricted to cases where the type of injury is objectively verifiable and inherently undiscoverable within the limitations period. *ExxonMobil*, 511 S.W.3d at 544. Appellants acknowledge that claims based on oil contamination of soil for surface spills are not inherently undiscoverable. *See id.* ("Soil contamination from oil spills is unquestionably objectively verifiable, but it is not inherently undiscoverable within the limitations period."). However, appellants attempt to distinguish the present case from *ExxonMobil*,

arguing that landowners like the appellants cannot typically learn of ground water contamination within the limitations period. Appellants further attempt to distinguish the present case because it did not involve active, surface oil spills as in *ExxonMobil*. We are unpersuaded by this argument.

In *ExxonMobil*, the plaintiff was a ranch owner who sued ExxonMobil for soil and groundwater contamination caused by oil drilling and production. *See id.* at 541. The ranch owner knew of many oil spills that occurred on the property and was also made aware of cleanup operations. *See id.* In concluding that claims based on soil contamination from oil spills are not inherently undiscoverable, the Texas Supreme Court noted that "[t]here was nothing inherent in the possibility of contamination that kept [plaintiff] from hiring [an expert to investigate possible contamination] sooner." *Id.* at 544.

We conclude the facts of this case are analogous to those in *ExxonMobil*. The plaintiff in *ExxonMobil* raised claims for soil and groundwater contamination, as did appellants. Although *ExxonMobil* involved surface oil spills, and the present case did not, we still conclude that there is nothing inherent in the possibility of soil or groundwater contamination that kept appellants from investigating potential contamination sooner.

Here, the summary judgment evidence established that the tanks on Bash Unit 1 containing sand, soil, oil, and saltwater residue were cleaned out on February 25, 2015. According to Sadeghi's affidavit, the cleaning of the tanks left "a noticeable area of stained soil." Further, the "tank bottoms remained on site pending removal of the tanks," which occurred on or about November 16, 2015.

Further, according to the TRC letter, appellant Lahijani complained, and was aware, of numerous spills that had occurred prior to 2016 that had caused vegetation to die on the property. Despite knowledge of the spills which caused

10

loss of vegetation, appellants did not visit the property for approximately six years, from 2010 to 2016. Appellants refute none of these facts. When appellants viewed the property with Lelazari in 2016, he recognized signs of potential contamination: oil-stained soil and white residue readily visible from the surface. This suggests that the appellants would have discovered facts that led them to investigate their injury had they exercised due diligence in visiting the property. *See Marshall*, 342 S.W.3d at 66; *Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) ("Inherently undiscoverable encompasses the requirement that the existence of the injury is not ordinarily discoverable, even though due diligence has been used.").

Furthermore, as noted in *ExxonMobil*, the owner's obligation of due diligence goes beyond mere passive visual observation; owners must inquire into the lessees' activities. *See ExxonMobil*, 511 S.W.3d at 544 n.19; Taub, 75 S.W.3d at 619–620. For six years, the plaintiffs' use of diligence did not rise to the level of even passive visual observation. Therefore, the type of injury alleged by appellants in this case—soil and groundwater contamination stemming from oil and gas operations— is not inherently undiscoverable. *See ExxonMobil*, 511 S.W.3d at 544; *Via Net*, 211 S.W.3d at 314; Taub, 75 S.W.3d at 619–620.

In summary, Americo conclusively established that appellants' claim began to accrue in February 2015 or earlier. We conclude that the discovery rule is inapplicable in the present case to defer accrual of appellant's claim. Appellants filed suit on October 13, 2017, which was more than two years after February 27, 2015. Accordingly, the trial court did not err in granting Americo's motion for summary judgment. We overrule appellants' two issues.

## III.  CONCLUSION

We affirm the judgment of the trial court.

/s/    Margaret "Meg" Poissant
        Justice

Panel consists of Chief Justice Christopher and Justices Hassan and Poissant (Poissant, J., majority).