

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00638-CV

**SWIFT ENERGY OPERATING, LLC**,
Appellant

v.

**REGENCY FIELD SERVICES LLC**, Regency Energy Partners LP, Regency GP LP, and
Regency GP LLC,
Appellees

From the 343rd Judicial District Court, McMullen County, Texas
Trial Court No. M-14-0029-CV-C
Honorable Janna K. Whatley, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:     Patricia O. Alvarez, Justice
Concurring and Dissenting Opinion by: Rebeca C. Martinez, Justice[1]

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: May 29, 2019

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

On April 10, 2019, this court issued an opinion and judgment in this appeal.  Appellant

timely filed a motion for rehearing.  We deny Appellant's motion for rehearing, but acting *sua*

*sponte* to clarify the applicable facts and analysis, we withdraw our April 10, 2019 opinion and

judgment and substitute this opinion and judgment in their stead.

---

[1] Concurring and Dissenting Opinion issued on April 10, 2019.

Appellant Swift Energy Operating, LLC sued Appellees for damage to its leased minerals allegedly caused by $H_2S/CO_2$ injectate spreading from Appellees' nearby injection well. Appellees asserted a statute of limitations affirmative defense, and both sides moved for summary judgment. Because Appellees conclusively established their affirmative defense only to Swift's PCQ lease claims, we affirm the trial court's order in part, reverse it in part, and remand this cause.

BACKGROUND

This case concerns damage caused by the underground spread of $H_2S/CO_2$ gas from an injection well. The damages Swift seeks pertain to its leases near Appellees' injection well in McMullen County.

A.    Swift's PCQ Lease

In 2009, Swift and Leo O. Quintanilla entered into a lease (the PCQ lease) for minerals underlying much of Quintanilla's ranch. The PCQ lease covers most depths below 2,000 feet for over 4,200 acres of the approximately 4,271-acre Quintanilla ranch. Swift's leased depths include some depths in the Olmos and Eagle Ford formations.

B.    Swift's Other (Non-PCQ) Leases

Swift has other leases in the area, some contiguous, some not, to the PCQ lease.[2] Swift's PCQ lease and its eight other (non-PCQ) leases are all near Appellees' injection well.

C.    Regency's Injection Well

Appellees are Regency Field Services LLC, Regency Energy Partners LP, Regency GP LP, and Regency GP LLC (collectively Regency). In 2006, Regency sought permission from the Texas Railroad Commission (RRC) to allow Regency to operate an injection well (the Tilden

---

[2] Swift's other (non-PCQ) leases include the following: the Bracken Lease, the Chew Lease, the FB Horton Lease, the Gonzales Lease, the Henry (Olmos) Lease, the Henry (Eagle Ford) Lease, the McClaugherty LS Lease, and the Quintanilla Me-You Lease.

Injection Well) in McMullen County to dispose of a gaseous mixture of concentrated hydrogen sulfide ($H_2S$) and carbon dioxide ($CO_2$).[3] Regency sought to pump the $H_2S$/$CO_2$ mixture, the injectate, into the Wilcox formation.

In its permit application, Regency submitted a plume model that predicted the injectate would spread horizontally by about 2,200 feet after forty years of injection.

The RRC Examiner's Report, issued in response to Regency's permit application, states there is "at least 250 feet of shale overlying the disposal interval and at least 100 feet of shale below the disposal interval. These shale barriers will prevent the [vertical] migration of acid gas from the disposal zone." The RRC approved Regency's plan to use $H_2S$ resistant materials, such as stainless steel, for the injection well and the RRC issued the permit for the Tilden Injection Well. In February 2012, the RRC approved an increased disposal rate. Regency's revised model predicted a horizontal spread of 2,900 feet after thirty years of injection.

**D. JCB Horton #1 Well Contamination**

In August 2012, Layline Petroleum was operating the JCB Horton #1 well. The JCB Horton #1 well is located on the Quintanilla ranch, and is about 3,300 feet northeast of the Tilden Injection Well. That August, Layline detected $H_2S$ in the JCB Horton #1 well; the $H_2S$ was tested and determined to have originated from Regency's Tilden Injection Well.

Although the plume was not predicted to spread to the JCB Horton #1 well even after thirty years of injection, in 2012, Layline had to plug and cap its JCB Horton #1 well because of the $H_2S$ contamination from Regency's injectate.

---

[3] At sufficient concentrations, the gaseous mixture is fatal to humans and is highly corrosive to metals commonly used in oil and gas production. The injectate at issue is approximately 34% $H_2S$, 64% $CO_2$, and 2% natural gas.

**E.      Layline's Notice to Swift of Spreading H2S Plume**

On October 23, 2012, Layline's Aaron Brougher e-mailed Swift's Richard Kimberlin with this message:

> Subject: McMullen County H2S outbreak
>
> Hi, Richard:
>
> Layline Petroleum is an offset operator of yours in McMullen County. I believe you have some of the deep rights where we have Olmos operation on the main Quintanilla Ranch.
>
> Regency has an H2S injection well just to our west that has exceeded their permit and have forced us to plug a producing well. It looks as though Swift has 2 horizontal wells permitted in the area and the bottom hole locations seem very near this injection well.

Later the same day, Swift's Bob Redweik responded to Layline's Aaron Brougher with this request:

> Subject: H2S BREAK OUT FROM INJECTION WELL IN McMULLEN COUNTY
>
> Can you provide me some additional details including our permitted well names which could be affected by this issue so that we can look into this further?

That evening, Layline's Aaron Brougher responded to Swift's Bob Redweik's request and identified the permitted wells that could be affected.

> The permitted wells are:
> PC-Q EF #5H, #8H and #10H

On October 29, 2012, Layline's Aaron Brougher asked Swift's Bob Redweik if Swift would like to participate in the upcoming RRC hearing with Layline. Swift's Bob Redweik responded with "I will say a tentative yes at present. Please keep me in the loop."

**F.      Procedural Posture**

In July 2014, Quintanilla and others sued Regency for trespass, negligence, and other causes. Swift intervened on September 24, 2015. Swift sued Regency for trespass, negligence,

gross negligence, and nuisance for present and future damage to seventy-four existing or planned wells.  Some of the wells are on the PCQ lease; others are on the non-PCQ leases.

Citing the two-year statute of limitations for injuries to real property, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003, Regency moved for summary judgment against all of Swift's claims.

The trial court granted summary judgment for Regency against Swift's PCQ lease and non-PCQ leases claims based on Regency's affirmative defense of limitations.

Swift appeals.

## LIMITATIONS PERIOD TO BRING SUIT

The limitations period for a trespass claim is two years.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) ("[A] person must bring suit for trespass for injury to the estate or to the property of another . . . not later than two years after the day the cause of action accrues."); *accord Taub v. Hous. Pipeline Co.*, 75 S.W.3d 606, 620 (Tex. App.—Texarkana 2002, pet. denied) (citing *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986)).

The limitations period for negligence, gross negligence, and nuisance claims is also two years. *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009, pet. denied) (negligence); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex. App.—Fort Worth 1996, writ denied) (gross negligence); *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 153 (Tex. 2012) (nuisance).

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense."  *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 608 (Tex. 2017) (quoting *KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)).  To establish that defense, if the discovery rule has not been pled or raised, "the defendant must . . . conclusively prove when the cause of action accrued." *KPMG*, 988 S.W.2d at 748.

"Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g) (citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)); *accord Town of Dish*, 519 S.W.3d at 609 ("[A] trespass claim accrues once 'known injury begins.'"). "Generally, when a cause of action accrues is a question of law." *Knott*, 128 S.W.3d at 221; *accord Emerald Oil*, 348 S.W.3d at 202.

"[T]he commencement of [a] limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998); *accord Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs*, 974 S.W.2d at 44).

## STANDARD OF REVIEW

"We review the trial court's summary judgment de novo." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018) (citing *Knott*, 128 S.W.3d at 215). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* (citing *Knott*, 128 S.W.3d at 215). We determine whether the movant has proved that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

## DISCUSSION

To be entitled to summary judgment on all of Swift's claims against it, Regency's burden was to conclusively establish its affirmative defense of limitations against each claim. *See Town of Dish*, 519 S.W.3d at 608; *KPMG*, 988 S.W.2d at 748.

Swift intervened on September 24, 2015, and the two-year limitations period applies to Swift's claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Justiss*, 397 S.W.3d at 153

(nuisance); *Hunt Oil*, 313 S.W.3d at 387 (negligence); *Taub*, 75 S.W.3d at 620 (trespass); *Hall*, 919 S.W.2d at 467 (gross negligence). Swift did not plead or raise the discovery rule, so Regency's burden was to conclusively establish that Swift's claims to the PCQ lease and the other leases accrued before September 24, 2013. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833–34 (Tex. 2018) (citing *KPMG*, 988 S.W.2d at 748).

We first address the arguments and claims pertaining to the PCQ lease.

## A.     PCQ Lease

### 1.     *PCQ Lease Arguments*

Swift argues that Regency failed to conclusively establish when Swift's PCQ lease claims accrued. Swift reasons that "no cause of action accrued merely because of the uninvited intrusion of injectate into the subsurface space covered by Swift's PCQ lease." Citing *Lightning Oil*, Swift asserts that no cause of action accrues until the "uninvited molecules" actually infringe on its mineral rights in its PCQ lease. *See Lightning Oil*, 520 S.W.3d at 49 ("[A]n unauthorized interference with the *place* where the minerals are located constitutes a trespass as to the mineral estate only if the interference infringes on the mineral lessee's ability to exercise its rights.").

Regency contends that the undisputed evidence conclusively proves that Swift's PCQ lease claims accrued more than two years before Swift sued. Citing *Town of Dish*, Regency argues Swift's PCQ lease claims accrued when the injectate entered the PCQ lease. *See Town of Dish*, 519 S.W.3d at 609 ("[A] trespass claim accrues once 'known injury begins.'"). Regency also contends that the injectate crossed onto the PCQ lease before October 2012. Regency notes the JCB Horton #1 well is wholly surrounded by the PCQ lease, and thus when Swift learned on October 23, 2012, that the JCB Horton #1 well had been contaminated by Regency's $H_2S$ plume, Swift knew that Regency's injectate had spread onto its PCQ lease, and Swift's causes of action accrued before October 2012.

*2.      PCQ Lease Claims*

In Layline's October 2012 injectate breakout warnings to Swift, Layline advised Swift of the $H_2S/CO_2$ contamination at Layline's JCB Horton #1 well, which was completely surrounded by Swift's PCQ lease.

The relative locations of the Tilden Injection Well, the JCB Hortion #1 well, and Swift's leased depths are important, and a cause of action accrual date analysis requires an examination of the geological facts in three dimensions.

a.      <u>Horizontal Plane</u>

In the horizontal plane, the location of Swift's leased depths with respect to the JCB Horton #1 well and the Tilden Injection Well is significant. Regency's Tilden Injection Well is approximately one-half mile north, northwest of the southwest corner of the PCQ lease. The JCB Horton #1 well is entirely surrounded by the PCQ lease.

b.      <u>Vertical Plane</u>

In the vertical plane, the depths of the injection well formation, the JCB Horton #1 well, and Swift's leased depths are also significant.

The summary judgment evidence shows the depths of the three formations that affect the analysis: the Wilcox, the Olmos, and the Eagle Ford.[4] Of the three, the Wilcox disposal zone is the highest—the closest to the earth's surface; it is the formation into which Regency is injecting the $H_2S/CO_2$ mixture. Below the Wilcox is the Olmos, in which Swift has leased minerals and from which the JCB Horton #1 well was producing. And beneath the Wilcox is the Eagle Ford, in which Swift also has leased minerals.

---

[4] There are other formations that lie above, between, and beneath the Wilcox, Olmos, and Eagle Ford formations, but there is no need to recite them here.

Taking Swift's summary judgment evidence as true, s*ee Koopmann*, 547 S.W.3d at 865, we note that to reach its PCQ leased depths in the Olmos and Eagle Ford formations, Swift must drill through the Wilcox. And as Swift pled and argued, drilling through an $H_2S/CO_2$ contaminated formation to reach its leased minerals will impose additional costs and burdens on Swift.

### 3. Notice of Injury to PCQ Lease

Layline's October 23, 2012 warning of $H_2S/CO_2$ injectate contamination of its JCB Horton #1 well was notice to Swift of Regency's injury-causing conduct—that the injectate plume had crossed the PCQ lease's western border and into Swift's PCQ lease. *See Town of Dish*, 519 S.W.3d at 609 ("[A] trespass claim accrues once 'known injury begins.'").

Because the injectate plume overlaid some portion of Swift's leased depths and would require Swift to drill any new wells through the contamination, Layline's October 23, 2012 e-mail was notice to Swift that the plume had "infringe[d] on [Swift]'s ability to exercise its rights" in its PCQ lease. *See Lightning Oil*, 520 S.W.3d at 49 ("[A]n unauthorized interference with the *place* where the minerals are located constitutes a trespass as to the mineral estate [when] the interference infringes on the mineral lessee's ability to exercise its rights."); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) ("[T]he statute of limitations begins to run when a party has actual knowledge of a wrongful injury."); *Tenn. Gas Transmission Co. v. Fromme*, 269 S.W.2d 336, 338 (Tex. 1954) (noting the "[plaintiff's] cause of action accrued at the time [the defendant] began wrongfully discharging the water *on the land*" (emphasis added)).

Layline's October 23, 2012 e-mail, which the record conclusively establishes that Swift received more than two years before Swift sued Regency, was notice to Swift that its PCQ lease rights had been infringed. *See Lightning Oil*, 520 S.W.3d at 49 (noting a trespass to a mineral estate occurs "if the interference infringes on the mineral lessee's ability to exercise its rights").

*4.      Swift's PCQ Lease Claims Barred*

The summary judgment evidence establishing the commencement of limitations for the PCQ lease claims is clear, and reasonable minds cannot differ on when the causes of action accrued. *See Hansen*, 525 S.W.3d at 681; *Childs*, 974 S.W.2d at 44. The summary judgment evidence conclusively establishes that Swift's causes of action for damage to its leased mineral interests in the PCQ lease accrued more than two years before Swift sued Regency on September 24, 2015. *See Lightning Oil*, 520 S.W.3d at 49; *Town of Dish*, 519 S.W.3d at 609. Thus, Regency conclusively established its affirmative defense of limitations against Swift's claims for injuries to its PCQ lease. *See KPMG*, 988 S.W.2d at 748.

We turn now to the arguments and claims pertaining to the other (non-PCQ) leases.

**B.      Non-PCQ Leases**

*1.      Non-PCQ Leases Arguments*

Swift argues it was Regency's burden to conclusively establish when Swift's causes of action accrued for its non-PCQ leases. Swift contends Regency produced no evidence of when Swift's causes of action for the non-PCQ leases accrued, and Regency was not entitled to summary judgment on those claims.

Rather than producing summary judgment evidence to conclusively establish when Swift's claims to its non-PCQ leases accrued, Regency proposes an entirely different analysis that relies on *Emerald Oil*. *See Emerald Oil*, 348 S.W.3d at 202–03, 207–08. Regency argues that under *Emerald Oil*, because (1) Swift sued Regency for damage to Swift's non-PCQ leases, (2) Swift's PCQ lease claims accrued more than two years before it sued, and (3) Regency moved for judgment against all of Swift's claims, Regency was entitled to judgment against all of Swift's claims. *See id.*

As we explain below, Regency's attempt to apply *Emerald Oil*'s field-wide notice for past damage proposition to Swift's non-PCQ lease claims for spreading contamination is misguided.

### 2.    *Non-PCQ Lease Claims*

Regency's reasoning relies on *Emerald Oil*, but *Emerald Oil* is distinguishable. *See id.*

#### a.    Misuse of *Emerald Oil*

To begin, *Emerald Oil* concerned whether Exxon sabotaged one or more of thirty-four wells owned by the same royalty owners with the same royalty provisions in the same field that Exxon (then Humble Oil) plugged during the same period; it was not a spreading contamination case. *See id.* at 200. When Emerald sued Exxon, any damage Exxon had done to the wells had already happened; there was no ongoing risk of spreading contamination or any possibility that Exxon's well-plugging acts would adversely affect other wells Exxon had not plugged. *See id.*

In marked contrast, Swift's claims for non-PCQ leases are based on spreading contamination from an injection well's plume where the injection is ongoing and the injectate plume continues to spread both horizontally and vertically in directions and at rates that have defied experts' earlier predictions. *Emerald Oil*'s proposition that notice of damage to eight wells in a thirty-four well group was notice of possible injury to each of the remaining twenty-six wells— where all the injurious actions and all the damage had already occurred, and where there was no ongoing damage and no risk of spreading to other wells or leases—does not support Regency's argument and is not the proper test. *Contra id.* at 202–03, 207–08.

#### b.    Proper Test

The proper test for an affirmative defense of limitations is well known and applies here. *See Town of Dish*, 519 S.W.3d at 608 (quoting *KPMG*, 988 S.W.2d at 748). To be entitled to judgment as a matter of law on its affirmative defense of limitations against Swift's claims arising from the non-PCQ leases, Regency's burden was to conclusively establish that each of Swift's

causes of action (i.e., trespass, negligence, gross negligence, and nuisance) accrued more than two years before Swift sued Regency. *See id.*; *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542 (Tex. 2017).

### c. When Causes of Action Accrue

For each of Swift's causes of action, the accrual date depends on when the injury occurred. *See Town of Dish*, 519 S.W.3d at 608.

For trespass, Swift's cause of action for a particular lease accrues when there is "an unauthorized interference with one of the rights [Swift] holds," such as the right to develop. *See Lightning Oil*, 520 S.W.3d at 49 (distinguishing trespass to land and trespass to a mineral right). As *Lighting Oil*'s trespass analysis teaches, "an unauthorized interference with the *place* where the minerals are located constitutes a trespass as to the mineral estate only if the interference infringes on the mineral lessee's ability to exercise its rights." *Id.*

For negligence and gross negligence, Swift's causes of action for a particular lease accrue when the injectate breaches the boundary of that lease and interferes with Swift's rights in that lease. *See Fromme*, 269 S.W.2d at 338 (noting in a negligence case, the property owner's "legal rights were invaded the moment water from the [defendant]'s plant began to flow upon [the plaintiff's] land").

For a permanent nuisance, Swift's "claim accrues when the condition first 'substantially interferes with the use and enjoyment of [its property] by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities.'" *See Town of Dish*, 519 S.W.3d at 609.

### d. Regency Failed to Meet Its Burden

For its affirmative defense of limitations against Swift's non-PCQ leases claims, Regency's burden was to conclusively establish when Swift's causes of action accrued. Specifically, when Regency's injectate allegedly "infringe[d] on [Swift']s ability to exercise its rights," *see Lightning*

*Oil*, 520 S.W.3d at 49 (trespass), substantially interfered with Swift's rights in each lease, *see Town of Dish*, 519 S.W.3d at 609 (nuisance), or invaded Swift's legal rights, *Fromme*, 269 S.W.2d at 338 (negligence, gross negligence). Because it did not produce or identify summary judgment evidence to conclusively establish the dates that each of Swift's claims to each of its non-PCQ leases accrued, Regency failed to carry its burden to conclusively establish its affirmative defense of limitations against Swift's claims for its non-PCQ leases. *See Town of Dish*, 519 S.W.3d at 608; *Lazy R Ranch, LP*, 511 S.W.3d at 542.

Regency did not move for summary judgment on any other grounds, and the trial court could not have granted summary judgment for Regency against Swift's non-PCQ claims on any other basis. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).

## CONCLUSION

The summary judgment evidence conclusively establishes that Swift knew more than two years before it sued Regency that its (Swift's) PCQ lease rights had been infringed by Regency's spreading injectate. Therefore, we affirm the portion of the trial court's order that grants summary judgment for Regency against Swift's PCQ lease claims.

But Regency failed to conclusively establish that each of Swift's claims regarding its non-PCQ leases accrued more than two years before Swift sued Regency. Therefore, we reverse the portion of the trial court's order that grants summary judgment for Regency against Swift's claims for its non-PCQ leases and remand the cause to the trial court.

Patricia O. Alvarez, Justice