

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00061-CV

———————————————

SCOTT R. HOYT, Appellant

V.

HARBOR LAKES HOMEOWNERS ASSOCIATION, Appellee

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. C2019150

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Scott R. Hoyt (Hoyt) appeals the trial court's order granting Appellee Harbor Lakes Homeowners Association's (HOA) traditional motion for partial summary judgment and denying his traditional motion for partial summary judgment. In two issues, Hoyt argues that the trial court misconstrued both his and the HOA's obligations in accordance with the parties' governing Bylaws and the Declaration of Covenants, Conditions, and Restrictions (CC&Rs) concerning debris that gathers near Hoyt's boat dock. Because we conclude that there are ambiguities in the relevant portions of the Bylaws and CC&Rs, summary judgment was improper as to Hoyt's declaratory-relief claim. Therefore, we affirm in part and reverse and remand in part.

## II. BACKGROUND

This lawsuit arises from a dispute between homeowner Hoyt and the HOA over who is obligated to clear debris from a body of water located next to Hoyt's lot and dock in a residential development. The HOA administers the residential development and is governed, in part, by the Bylaws and CC&Rs. The HOA is overseen by a board of directors who manages and administers the affairs of the HOA. Under the CC&Rs, Hoyt is the owner of a "Waterway Lot," which is defined as a lot that is "immediately adjacent to and contiguous with a navigable waterway."

According to Hoyt's original petition, he has owned his property in the Harbor Lakes subdivision located in Granbury, Texas, since 2008. Hoyt's property is located

next to an adjacent body of water which is itself adjacent to and fed by Lake Granbury. Hoyt's property sits at the end of the adjacent body of water (which both parties refer to as a "canal"), and his boat dock is located behind his home.[1] On the Lake Granbury side of Hoyt's lot is a peninsula managed by the HOA, and on the other side are other Waterway Lot owners.

Hoyt pleaded that "each spring, with heavy rains and releases from Possum Kingdom Dam, upstream from Lake Granbury, heavy wood debris and trash has floated down the lake, entered the canal," and then "migrated with the generally prevailing south easterly wind, along the inside shoreline of HOA's peninsula, down the canal and along the waterfront property lines of the upstream owners on the eastside of the canal." According to Hoyt, other neighbors literally push the debris away from their own docks so that it will continue to float with the current into the water surrounding his dock. To better understand the path the debris takes and how it eventually settles around his dock, Hoyt attached the following picture to his motion for partial summary judgment.

---

[1]One of Hoyt's exhibits indicates that the HOA has an easement on the land between Hoyt's residence and his boat dock.



According to Hoyt, over the several years prior to the filing of this lawsuit, he approached the HOA and asked it to pay for the removal of the debris that had built up in front of his boat dock and neighboring boat docks. Hoyt contended that the HOA was bound by the association's Bylaws and CC&Rs to maintain the canal. Although the HOA's president had acknowledged that he was "very empathetic" to Hoyt's and his neighbor's "nemesis," and that he and the board had considered "a one time remediation," the HOA did nothing to relieve the problem. Citing provisions in the CC&Rs, the HOA claimed that it was Hoyt's duty to keep the canal in front of his boat dock clear of the debris, and the HOA refused Hoyt's request for reimbursement for his past expenses.

4

Because of the HOA's refusal, Hoyt brought this suit claiming "breach of contract/covenants" and also seeking declaratory relief. Regarding his declaratory-relief claim, Hoyt pursued

> [a] judicial declaration that HOA has a covenant/contractual duty to clean the debris from the canal adjacent to its property, [Hoyt's] property, and the properties of other waterway homeowners, or alternatively that HOA and upstream owners have the responsibility to remove the debris when it is adjacent to their property before it reaches [Hoyt's] property.

The HOA answered with a general denial and asserted several affirmative defenses and a "counterclaim" for attorney's fees.

During discovery, and in response to an interrogatory asking who is responsible for removing debris in the middle of the canal, the HOA answered in part that

> [e]ither the HOA or particular owners could be responsible for removing debris in the middle of the Canal from the water depending on the exact location of the debris. Nonetheless, upon routine inspection of the middle of the Canal, the HOA has not identified debris that requires the HOA's removal. The wind and water currents may naturally move any alleged debris from remaining in the water in the middle of the Canal for which the HOA may have an obligation to remove.

Similarly, in its response to a request for admission, the HOA replied in part that "[e]ither the HOA or particular owners could be responsible for removing debris from the middle of the Canal from the water depending on the exact location of the debris." In response to another request for admission asking the HOA to admit that it "levies assessments on owners to 'maintain the waterways,'" the HOA responded that it objected to the request "as it is ambiguous, vague, and confusing because it is

5

unclear what the phrase 'maintain the waterways' refers to and who is obligated to maintain the waterways."

Later, the HOA filed its traditional motion for partial summary judgment (on all but its attorney's fees counterclaim) seeking a ruling that it was not obligated to perform any maintenance in the canal "contiguous" to Hoyt's property or to keep the canal free from the debris. The HOA argued in the alternative that Hoyt was barred from bringing his claims by release language in the CC&Rs. Hoyt also filed his traditional motion for partial summary judgment. In his motion, Hoyt asserted that he was entitled to a declaration that the HOA had the duty under the Bylaws and CC&Rs to maintain common areas, including the duty to remove debris gathering in the end of the canal and to remove debris from near the peninsula. Hoyt also argued that the HOA had breached this duty.

Eventually, the trial court entered its "Supplemental Order Granting Defendant's Traditional Motion for Partial Summary Judgment and Declaration Regarding the Rights & Duties of the Parties."[2] In addition to granting the HOA's summary judgment motion, the trial court denied Hoyt's motion. The trial court also made the following declarations:

---

[2]The trial court initially entered an "Order Granting Defendant's Traditional Motion for Partial Summary Judgment" on February 3, 2020, but the order did not contain any declarations of the parties' rights. On April 27, 2020, the trial court entered an order denying the HOA's counterclaim for attorney's fees. On October 21, 2020, this court abated this case to the trial court in order for the trial court to enter a judgment declaring the rights of the parties on all matters.

6

1.  With respect to the [HOA], the restrictive covenants do not obligate or place any legal duty on the [HOA] to remove debris, trash, rubbish, or garbage from any portion of any of the canals that are in anyway part of the homeowners association.

2.  With respect to [Hoyt], the restrictive covenants expressly and specifically place a mandatory responsibility and obligation on [Hoyt] to remove debris, trash, rubbish, or garbage from the portion of the canal contiguous to [Hoyt's] lot.

3.  With respect to the [HOA], the common area peninsula in question is not a "lot" and the [HOA] is not an "owner" pursuant to the definitions in the restrictive covenants, and accordingly, the mandatory obligation for removal of debris along the water adjacent to the peninsula does not apply to the [HOA] and therefore does not create an obligation or legal duty imposed on the [HOA] to remove debris along the water adjacent to the peninsula.

4.  With respect to the [HOA], it has the responsibility for improvement, maintenance, and other care for the canals, channels, sea walls and bulkheads; however no specific responsibility or duty to remove debris from the channels and canals is expressly imposed on the [HOA] by the restrictive covenants.

5.  With respect to the [HOA] and the declaration of its rights and duties in Paragraph 4 above, in carrying out its responsibility to maintain and care for the canals and waterways, the restrictive covenants specifically provide that the Judgment of the [HOA's] Board of Directors in expenditures of the "General Assessment Fund" and the "Waterway Assessment F[u]nd" [unintelligible[3]] phrases are defined by the restrictive covenants, and its determination of what continues [sic] normal, recurring maintenance shall be final and conclusive so long as such judgment is exercised in good faith. The Court declares that the [HOA's] determination that debris removal does not constitute normal, recurring maintenance was made in good faith based on

---

[3]The document appears to contain a scanning error.

the findings of this Court that the [HOA] has no obligation or []
duty to remove debris from the channels or canals.

This appeal followed.

### III. DISCUSSION

In two issues,[4] Hoyt argues that the trial court erred by granting the HOA's motion for summary judgment and denying his motion for summary judgment. Specifically, Hoyt argues that the trial court erred by "interpreting [his] duty under Section 22[5] of the CC&Rs, to keep that portion of the canal 'contiguous' and 'immediately adjacent' to his lot 'free of debris,' to completely override and remove HOA's duty under the Bylaws and CC&Rs to maintain/clean the canal and 'all other care' of it." Hoyt further argues that this "interpretation also contravenes HOA's duty under the governing city ordinance. At best for HOA, the requirement by owners to keep the area 'immediately adjacent' to their lots, is ambiguous in scope, as demonstrated by HOA's evasive discovery responses and should have been construed against HOA."

The HOA counters that the Bylaws and CC&Rs do not expressly obligate it to remove debris from the canal; rather, a specific provision of the CC&Rs obligates

---

[4]Even though Hoyt states that he has two issues in the "Issues Presented" section of his brief, in the body of his brief he has blended the two issues. We will address both issues together.

[5]Article VIII, Section 22 of the CC&Rs states the duties of Waterway Lot owners and of the HOA regarding maintenance of certain bodies of water and is detailed below.

8

Hoyt, as a Waterway Owner, to remove debris from the canal contiguous to his property. We conclude that relevant provisions of the Bylaws and CC&Rs contain ambiguities and thus there are fact questions regarding the parties' intent, and summary judgment was improper.

## A. Summary Judgment Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

## B. The Release

Prior to addressing Hoyt's issues, we first address the HOA's contention that Hoyt is "contractually barred" from bringing this suit.[6] Pointing to Article VII, Section 8 of the CC&Rs, the HOA argues that Hoyt contractually waived any claims against the HOA. This section states,

> Section 8. Adjacent Waterway, Waterway and Lake. Owners acknowledge[] that neither Declarant nor the Association own or control the waterway, or lake developed in close proximity to the Property. As a material inducement to cause Declarant to enter into and execute this Restated Declaration and to consummate the transactions contemplated hereby, each Owner, on behalf of himself, herself and/or itself and all of its successors and assigns (including, but not limited to, any future purchasers of any houses constructed on any of the Lots), hereby (a) waives, releases and relinquishes any and all claims it or they may now or hereafter have against Declarant, the Association, the City of Granbury, Texas, and their respective heirs, executors, personal representatives, successors or assigns (the "Released Parties") and (b) indemnifies each and all of the Released Parties from and against any and all losses, damages, costs, claims, liabilities, actions, causes of action, or expenses of any kind or character, arising out of or resulting from any activities related to the waterway or lake. Each Owner also covenants and agrees that it will include in any contract for the sale of any Lot to any third party that such contract shall expressly include the waiver, release and indemnity provisions contained in this Section 8.

According to the HOA, regardless of the answers to the claims that Hoyt has raised in this suit, the CC&Rs contain this waiver language and the HOA is released

---

[6]Although the HOA argues that Hoyt is "contractually barred from recovering damages," the HOA also contends that Hoyt's entire lawsuit is barred because "his claims revolve[] around the maintenance and cleanup of the canal adjacent to" Hoyt's property. We interpret the HOA's position to be that Hoyt cannot bring his declaratory-relief claim as well as his breach of contract/covenants claim.

"from any and all liability with respect to the maintenance and cleanup of the waterways and lakes." We disagree that the release encompasses Hoyt's declaratory-relief claim.

A release is a writing which provides that a duty or obligation owed to one party to the release is discharged immediately on the occurrence of a condition. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 20 S.W.3d 692 (Tex. 2000). Like any other agreement, a release is subject to the rules of construction governing contracts. *Grimes v. Andrews*, 997 S.W.2d 877, 881 (Tex. App.—Waco 1999, no pet.). When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). The contract must be read as a whole, rather than by isolating a certain phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). And to effectively release a claim, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Any claims not "clearly within the subject matter" of the release are not discharged. *Id.*; *see also Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g).

11

When a release contains broad-form language that evinces a specific intent to cover multiple types of claims, courts will not hesitate to find the claims were released. *See, e.g., Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180–81 (Tex.1997) (holding that a release, which released all "causes of action of whatsoever nature, or any other legal theory arising out of the circumstances described above, from any and all liability damages of any kind known or unknown, whether in *contract or tort*," released fraudulent inducement claims (emphasis added)). Likewise, courts will construe broadly drafted releases to encompass a wide variety of claims. *See, e.g., Anheuser–Busch Co. v. Summit Coffee Co.*, 858 S.W.2d 928, 932 (Tex. App.—Dallas 1993, writ denied) (holding that a release, which released "any and all causes of action of *any nature whatsoever, at common law, statutory or otherwise*," included fraud and securities law claims because the release, by reference to the stock purchase agreement, mentioned all claims involving undisclosed liabilities, a specific class of claims which included the claims at issue (emphasis added)), *judgment vacated and case remanded on other grounds*, 514 U.S. 1001, 115 S. Ct. 1309 (1995).

However, the release at issue in this case is not a broad-form general release. *See Baty*, 63 S.W.3d at 848. It does not purport to release claims of "any nature whatsoever"; it does not even mention declaratory claims. Rather, it covers "losses, damages," and other compensation "arising out of or resulting from any activities related to the waterway or lake." It does not purport to cover actions such as the one Hoyt filed seeking declaratory relief.

12

A release containing similar language can be found in the case of *Garza v. Bunting.* No. 05-06-01307-CV, 2007 WL 1545937 (Tex. App.—Dallas May 30, 2007, no pet.) (mem. op.). In *Garza*, the mutual release contained language releasing either party "from any and all claims or causes of action of any kind whatsoever, known or unknown, now existing, which arise out of or relate in any way to the claims asserted, or that could have been asserted in" prior litigation between the parties regarding the sale of residential property. *Id.* at *2. The appellant in that case argued that the appellees were barred from using a declaratory judgment action to determine liability. *Id.* The *Garza* court reasoned that construction and validity of a contract is the most obvious and common use of the declaratory-judgment action. *Id.* at *4. The court held that appellees were not barred by the release from seeking declaratory relief because the appellees "properly sought a declaratory judgment from the trial court to adjudicate and declare the parties' rights under a contract." *Id.*

Here, despite the language found in the CC&Rs releasing the HOA from "any and all claims [an "Owner"] may now or hereafter have against" the HOA and other entities, Hoyt is seeking only a judicial determination of the parties' respective duties under the CC&Rs. The release is further limited to "activities related to the waterway or lake."[7]

---

[7]*See Victoria Bank*, 811 S.W.2d at 938 ("[C]laims not clearly within the subject matter of the release are not discharged.").

13

Furthermore, the HOA's interpretation of the release in this case would lead to an absurd result. We avoid constructions that would lead to absurd results. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626–27 (Tex. 2011) (per curiam); *Henry v. Masson*, 333 S.W.3d 825, 846 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Moreover, we construe releases (as contracts) "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" and "will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

If we were to agree with the HOA, it would lead to the absurd result that while the HOA has general duties under other provisions of the CC&Rs, no "Owner" could ever bring an action seeking a declaration of specific duties under the express terms of the CC&Rs. Such an interpretation of the release would be unreasonable and result in the inequitable situation that "Owners" could not seek clarification of either their or the HOA's duties pursuant to the CC&Rs. *See id.* We therefore hold that Hoyt is not barred by the release from bringing his declaratory-relief claim.[8]

---

[8]Hoyt does not argue that the trial court erred by granting summary judgment in the HOA's favor regarding his "breach of contract/covenants" cause of action. Therefore, we need not and have not addressed whether the release applies to that claim. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (per curiam) (reasoning that an appellate court should affirm the trial court's summary judgment on unchallenged claims).

## C. The Granbury Ordinance

In part of both of his issues, Hoyt relies on a City of Granbury ordinance. City of Granbury Subdivision Ordinance No. 09-360, Section 3.11, states that "[c]anal cut-throughs must be maintained to be free of trash, debris, vegetation, and stagnant water." Granbury, Tex., Subdivision Ordinance No. 09-360, § 3.11 (July 9, 2020).[9] Thus, Hoyt argues that under this ordinance it is the HOA's responsibility to clear the canal of the debris. Regarding this argument, Hoyt asks this court to take judicial notice of the ordinance under Rule 204 of the Texas Rules of Evidence. Tex. R. Evid. 204. But we agree with the HOA that Hoyt has waived the issue of the city ordinance for our review because he did not timely raise the issue before the trial court.

In the summary judgment context, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c); *see also ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 545 (Tex. 2017). In this case, Hoyt never raised the issue of the city ordinance in his motion for summary judgment or in his response to the HOA's motion. The first time Hoyt raised this issue was in his appellate brief to this court. Thus, we cannot consider Hoyt's city-ordinance argument as a ground for reversal in this case. *See Lazy R Ranch,* 511 S.W.3d at 545. We therefore decline to

---

[9]City of Granbury's Subdivision Ordinances can be found at https://www.granbury.org/DocumentCenter/View/268/Subdivision-Ordinance.

15

take judicial notice of the ordinance, and we overrule this portion of Hoyt's two issues.

## D. The Bylaws, CC&Rs, and the Parties' Respective Duties

The trial court was asked to render a declaratory judgment regarding the duties of the parties under the restrictive covenants. Restrictive covenants are subject to the same rules of construction and interpretation as contracts. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). For a court to be able to construe a contract as a matter of law, the contract must be unambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). As with releases, "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument[,]" and "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Id.* "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). And we may conclude a contract is ambiguous even if the parties do not plead ambiguity or argue the agreement contains an ambiguity. *Naik v. Naik*, 438 S.W.3d 166, 175–76 (Tex. App.—Dallas 2014, no pet.). If a restrictive covenant contains an ambiguity, a trial

16

court errs by granting summary judgment because the interpretation of ambiguous contracts is a question of fact for a factfinder. *Coker*, 650 S.W.2d at 394; *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 459 (Tex. App.—Fort Worth 2009, pet. denied).

### 1. Article VIII, Section 22 of the CC&Rs

One of the arguments asserted by both parties is that Article VIII, Section 22 of the CC&Rs places the burden of clearing the complained-of debris on the other party. Under Hoyt's interpretation of this provision, the HOA has the primary duty and responsibility to maintain the canal to keep it clean and free of debris to preserve its navigability for owners' safety, use, and enjoyment. The HOA, on the other hand, argues that this provision imposes specific maintenance obligations with respect to canals on owners of Waterway Lots, like Hoyt. Article VIII, Section 22 of the CC&Rs states in part,

> Section 22. Canals and Slips. The Owner of each Waterway Lot shall be responsible for maintaining that portion of any canal contiguous to his Waterway Lot and any boat slip, dock or pier permitted by rules and regulations of the Association immediately adjacent to and contiguous with the Waterway Lot shall be free of all debris, trash, rubbish, garbage, or any other unsightly or unsanitary material and the boat slips, dock, mooring or pier shall be in good repair at all times and shall not cause any hazard to navigation, provided, however, that improvement, maintenance, repair and other care for the canals, channels, sea walls and bulkheads within the Subdivision shall be the responsibility of the Association . . . .

The HOA focuses its argument on what it refers to as "clear and express language" of Hoyt's "maintenance obligation" to keep the canal continuous to his lot

17

free of debris. The HOA points out that its general maintenance duties under Section 22 do not include debris removal, and yet Hoyt, as a Waterway Lot owner, is instructed specifically to keep the area contiguous to his lot "free of all debris." Thus, the HOA argues that the CC&Rs unambiguously place the duty of cleaning the debris squarely on Hoyt.

In contrast, Hoyt focuses on the language that as an owner of a Waterway Lot, he is responsible only "for maintaining the portion of any canal contiguous" to his lot and that he is responsible for maintaining certain structures "immediately adjacent to and contiguous" with his lot. Hoyt further points out that "other care for the canals . . . shall be the responsibility of the Association." Hoyt asserts that the CC&Rs unambiguously require the HOA to maintain the canal and remove the debris. In the alternative, however, Hoyt argues that at best Section 22 is ambiguous because it is not clear how far out into the canal is considered "contiguous to" or "immediately adjacent" to his lot. Hoyt further asserts that any ambiguity must be construed against the HOA because it is the author of the CC&Rs. We conclude that what constitutes "contiguous to" or "immediately adjacent" to an owner's lot is ambiguous, but we disagree that the remedy is to construe the CC&Rs against the HOA. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 282 (Tex. 2018) (discussing how the strict-construction-against-the-declarant rule is unsettled in Texas); *see also Smith v. Davis*, 453 S.W.2d 340, 344 (Tex. App.—Fort Worth 1970, writ

18

ref'd n.r.e.) (considering and rejecting application of rule *after* jury trial on ambiguous contract).

Here, the words "contiguous" and "adjacent" are not defined anywhere in the CC&Rs. Generally, words of common use are given their plain and ordinary meanings unless it appears from the context they were used in a different sense. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Vinson v. Brown*, 80 S.W.3d 221, 231 (Tex. App.—Austin 2002, no pet.). We must, therefore, determine whether the plain, ordinary meanings of "contiguous" and "adjacent" show the parties' intent. *Harris v. Hines*, 137 S.W.3d 898, 906 (Tex. App.—Texarkana 2004, no pet.).

Merriam-Webster defines "contiguous" as "being in actual contact" or "touching along a boundary or at a point." *Contiguous*, Merriam-Webster, https://www.merriam-webster.com/dictionary/contiguous (last visited July 9, 2021). Merriam-Webster defines "adjacent" as "not distant" or "having a common endpoint or border." *Adjacent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/adjacent (last visited July 9, 2021). But these definitions are not helpful in answering Hoyt's question about how far out into the canal is considered contiguous or adjacent to his property because they do not define the boundary or point referenced, meaning that the terms are uncertain and doubtful. *Heritage Res.*, 939 S.W.2d at 121.

The ambiguousness of these terms is supported by the HOA's responses during discovery. Indeed, the HOA admitted that either it or an owner could be responsible for removing the debris "depending on the exact location of the debris." But the HOA did not explain what "exact" locations it was referring to, and it summarily responded that it had inspected the "middle" of the canal and had not identified debris that it was required to remove. It also responded that either it or a particular owner could be responsible for removing debris from the "middle" of the canal. But the HOA did not, nor does it on appeal, offer an explanation of where the "middle" of the canal is or where the "contiguous" or "adjacent" portion of the canal next to Hoyt's property begins or ends. We conclude that these terms as they appear in Section 22 are ambiguous, and the trial court erred by granting summary judgment because the interpretation of an ambiguity in a restricted covenant is a question of fact for a factfinder. *Coker*, 650 S.W.2d at 394. We sustain these parts of Hoyt's two issues where he argues that the CC&Rs are ambiguous as to what is meant by "contiguous" or "immediately adjacent" to his lot.

## 2. The HOA's Duties Under the Bylaws and CC&Rs

In another part of his two issues, Hoyt argues that the trial court erred by finding that the HOA has no duty to "remove debris, trash, rubbish, or garbage from any portion of any of the canals" under the Bylaws and CC&Rs and that "maintenance" or "maintained" as those terms are used in reference to the canal must inherently include a duty to keep the canal free of debris. We conclude that these

20

terms are also ambiguous when determining the HOA's duties to clean the canal; thus, there is another fact issue concerning the parties' intent in using the terms "maintenance" or "maintained," and summary judgment was improper.

In support of his argument, Hoyt points to specific language in the Bylaws and CC&Rs. Under Bylaw Article VIII(m), the HOA has the duty "[t]o generally provide for maintenance and preservation of the Properties and the Common Areas and promote the health, safety and welfare of the Owners." Bylaw Article VII, Section 2(f) obligates the HOA "[t]o cause the Common Areas to be maintained." Article I, Section 8 of the CC&Rs defines "Common Areas" to include "waterways and canals." And Section 9 includes canals in defining "Common Maintenance Areas."

Merriam-Webster defines "maintain" as "to keep in an existing state (as of repair, efficiency, or validity)" or to "preserve from failure or decline." *Maintain*, https://www.merriam-webster.com/dictionary/maintain (last visited July 9, 2021). And Merriam-Webster defines "maintenance" as "the act of maintaining" or "the upkeep of property or equipment." *Maintenance*, https://www.merriam-webster.com/dictionary/maintenance (last visited July 9, 2021). Like the definitions of contiguous and adjacent, these definitions are not helpful in determining the question of whether the HOA's duties to keep common areas maintained or to generally provide for the maintenance of the common areas includes removing debris from the canal at issue in this case because they do not explain whether "keep[ing] in

21

an existing state" includes cleaning debris from a canal. The ambiguity of these terms is highlighted by the HOA's response during discovery that it is "ambiguous, vague, and confusing . . . what the phrase 'maintain the waterways' refers to and who is obligated to maintain the waterways." Thus, these terms as they appear in the Bylaws and CC&Rs are ambiguous, and the trial court erred in granting summary judgment because the interpretation of an ambiguity in a restricted covenant is a question of fact for a factfinder. *Coker*, 650 S.W.2d at 394. We sustain these parts of Hoyt's two issues.

### 3. General Assessment Fund and Special Waterway Assessment Fund

In the remainder of his two issues, Hoyt argues that the trial court erred by interpreting certain portions of the CC&Rs and the Bylaws as giving the HOA discretion on whether to expend certain assessment funds on cleaning up the complained-of debris. The HOA argues that its exercise of discretion in using these funds is presumed reasonable.

Pertinent to this subissue are two assessment funds found in the CC&Rs: (1) a General Assessment Fund defined by Article II, Section 3.A. and (2) a Waterway Assessment Fund defined by Article II, Section 3.B. Under both sections, certain owners, including Hoyt, are assessed fees that are to be placed in the respective funds. Under Section 3.A., the General Assessment Fund is defined as being for the purpose of the HOA to provide "for normal, recurring maintenance charges for the Common Maintenance Areas for the use and benefit of all Members of the Association."

22

Section 3.A. further states that these funds are to be used at "the judgment of the Board of Directors . . . so long as such judgment is exercised in good faith."

Likewise, the Waterway Assessment Fund is defined as being for the purpose of funding the "normal, recurring maintenance charges for the waterways, canals, sea walls, bulkheads and dredging of the waterways for the use and benefit of all members of the Association." Similar to the General Assessment Fund, the Waterway Assessment Funds are to be used at "the judgment of the Board of Directors . . . so long as such judgment is exercised in good faith."

Hoyt argues that the HOA has acted capriciously, unreasonably, arbitrarily, and in bad faith by not removing the debris. The HOA argues that it is entitled to a presumption of having acted reasonably in determining it did not have the duty to expend funds to remove the debris. Both parties direct us to Section 202.004 of the Texas Property Code in support of their respective arguments. Tex. Prop. Code Ann. § 202.004.

Section 202.004 of the Texas Property Code, entitled "Enforcement of Restrictive Covenants," provides as follows:

> (a) An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.
>
> (b) A property owners' association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation

23

or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument.

(c) A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation.

*Id.* This statute establishes a cause of action and authorizes a trial court to assess civil damages for each day of the violation of a restrictive covenant. *KBG Invs., LLC v. Greenspoint Prop. Owners' Ass'n, Inc.*, 478 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Subsection (a) "creates a rebuttable presumption that a property owners' association or other representative acts reasonably in exercising its discretionary authority." *La Ventana Ranch Owners' Ass'n, Inc. v. Davis*, 363 S.W.3d 632, 647 (Tex. App.—Austin 2011, pet. denied). A presumption is simply a rule of procedure or an administrative assumption that may be overcome when positive evidence to the contrary is introduced. *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.).

Here, Hoyt argues that the "HOA has unreasonably and arbitrarily saddled one owner—[Hoyt], with sole responsibility to clean the canal of debris adjoining other owners' lots and HOA's peninsula for which HOA is responsible and for which it assesses maintenance funds <u>against all waterfront owners</u>." Hoyt does not point to any authority to demonstrate how the HOA's actions were arbitrary, capricious, or discriminatory, nor has he pointed this court to any specific evidence demonstrating the same. The HOA counters that because it enjoys the presumption of

reasonableness in its discretionary acts, the burden was on Hoyt to bring forward admissible, summary judgment evidence to the trial court to "prove by a preponderance of the evidence that the Board's exercising of its discretionary authority was arbitrary, capricious, or discriminatory" and that he did not. We agree with the HOA that because Hoyt did not provide evidence that the HOA exercised its discretionary authority in an arbitrary, capricious, or discriminatory way, Hoyt has failed to overcome the presumption that the HOA acted reasonably in exercising its discretion to not expend funds from either the General Assessment Fund or the Waterway Assessment Funds to remove debris from the canal.[10] *See* Tex. Prop. Code Ann. § 202.004(a). We overrule the remainder of Hoyt's two issues.

## IV. CONCLUSION

Having concluded that the relevant provisions of the Bylaws and CC&Rs regarding whose duty it is to remove the debris from the canal contain ambiguities, we reverse the trial court's grant of summary judgment regarding the declarations that the HOA has no duty to clear the debris and that the responsibility falls entirely on Hoyt, and we remand this case to the trial court for further proceedings. We affirm the trial court's judgment in all other aspects.

---

[10]The HOA's decision as to whether to expend funds from either the General Assessment Fund or the Waterway Assessment Fund is not dispositive of the issue of duty to clean debris from the canal.

25

/s/ Dana Womack

Dana Womack
Justice

Delivered:  July 15, 2021